PATTI KING, BY NEXT FRIEND, COMPLAINANT, APPELLEE, *v.* W. H. KING *et al.*, DEFENDANTS, APPELLEES AND APPELLANT.

(*Nashville,* December Term, 1932.)

Opinion filed April 18, 1933.

116

E. W. Eggleston and M. P. Estis, for complainant, appellee.

H. B. Talley, for defendants, appellees.

R. H. Croskett, for defendant, appellant.

Special Justice Garvin delivered the opinion of the Court.

This cause turns upon the application, construction and effect of Section 2193 of the Code of 1858, carried into Shannon's Annotated Code as Section 3925 and reading as follows:

*"A child born after the making of a will, either before or after the death of the testator, not provided for 'nor disinherited, but only pretermitted in such will, and not*

*provided for by settlement made by the testator in his lifetime, shall succeed to the same portion of the testator's estate as if he had died intestate."*

The bill in the cause prays for a sale for partition of three contiguous parcels of land, forming one tract of about 124 acres situated in Williamson County, which were owned in fee simple by Fannie G. Paschall, wife of Dr. George C. Paschall, at the date of her death in December, 1918. Mrs. Paschall left a last will and testament, bearing date December 6, 1905, which was admitted to probate in the county court of Williamson County at its May term, 1929. Omitting formal parts, said wi'' reads as follows:

"Item 1. I will and devise to my husband George C. Paschall, for and during the period of his natural life. the use of my lands (describing them by references and being the lands sought to be sold for partition).

"Item 2 . I will and devise my lands, after the termination of the life estate given to my husband George C. Paschall to my brother W. E. King, if he is then living, and if he be dead, then said lands shall go to his children, share and share like, the child or children of any deceased child to take the share the parent would have taken, if living.

"Item 3. I appoint my husband, George C. Paschall, executor of this my will. Witness my hand this the 6th day of December, A.D.

"Fannie G. Paschall."

The testatrix was survived by her husband and by a son, George C. Paschall, Jr., who was the only child ever born to her. The child was born April 6, 1906, four months after the date of his mother's will.

Dr. Paschall found the will shortly after his wife's

death among her valuable papers in the bank in Franklin where she was accustomed to transact her banking business, and filed it in the County Court, but declined to ask that it be probated or to claim under it and gave notice to W. E. King and his children that he would contest it and that he claimed curtesy in the land. Thereafter Dr. Paschall occupied and used the land until his death in September, 1926. Upon his death the son George C. Paschall, Jr. took possession of the land and occupied and used it until his death in May, 1929. This was without interference from W. E. King, who, however, did not by any affirmative act relinquish or surrender any interest he had in the land. Upon the death of George C. Paschall, Jr. King caused the will to be probated in common form in the County Court of Williamson County at its May term, 1929, and it has remained uncontested. The lands included in the will were all the real estate owned by Mrs. Paschall. Her personal property upon her death passed to Dr. Paschall, *jure mariti*.

George C. Paschall, Jr., left a holographic will by which he bequeathed $500 to one Toon and wife, but otherwise he died intestate. He was never married, and if he took title to the land left by his mother, it descended upon his death to her heirs at law. These are (1) said W. E. King, who is a brother of Mrs. Paschall of the whole blood (2) a brother and four sisters of the half blood, being children of Mrs. Paschall's father by a former marriage and (3) the complainant, child and only heir at law of another half brother, who survived Mrs. Paschall and died intestate in 1924. The complainant and the other heirs at law, except W. E. King, claim that under the section of the Code of 1858 above quoted the land did so descend and that its proceeds should be divided ac-

cordingly. W. E. King, in pleadings which need not be set out, claims the lands as sole owner under his sister's will and denies that his right is in any way affected by the Code provision.

The facts are not in dispute. Those which have hereinbefore been stated appear from the pleadings and from a stipulation of facts made by the parties. Other facts appearing in the stipulation will be referred to further on. On the trial, under a right reserved, each side excepted to certain parts of the stipulation, but the Chancellor overruled all of the exceptions, and upon consideration of all the facts he sustained the bill and ordered a reference. From this decree the defendant prayed and was allowed an appeal.

In this Court he has made numerous assignments of error, which need not be stated in detail but which may be summarized as follows:

### I.

That the Chancellor erred in sustaining jurisdiction of the cause. The ground of this assignment is that the probate of the will in common form was conclusive and is not subject to be attacked collaterally but only upon an issue of *devisavit vel non.*

■ While the bill does aver that the probate of the will was a nullity, it is evident that by this the complainant meant to say only that the will, though admitted to probate, had no effect under the Code provision upon the rights of George C. Paschall, Jr., or those claiming under him. The Chancellor had jurisdiction to determine this question, and this assignment is not well made.

## II.

That the Chancellor erred in holding that the Code provision applies to and includes a testatrix as well as a testator.

██ This provision of the Code was drawn from Chapter 28 of the Acts of 1823, which expressly dealt with the case of a child born to a father after the latter had made his will. Both the act and the subsequent Code provision were manifestly intended for the benefit of after born children, and not for that of the parent. At the time of the passage of the Act, however, a married woman was without power to dispose of her estate by will, and therefore it was unnecessary to make provision in the Act for the case of a married woman making a will and leaving an after born child, because in the then state of the law such a case could not arise. But by Chapter 180 of the Acts of 1851-2 the power to dispose of real estate by will was conferred, albeit to a limited extent, upon married women. Such was the situation when the Code of 1858 was adopted. In Section 50 of the Code it was provided, under the head of definitions, that words of the masculine gender include the feminine and neuter, and in Section 2193 the Act of 1823 was reenacted but with a change of the word "father" to "testator." The Court is of opinion that the Code provision does include a testatrix. The doubt expressed by Judge WILKES' *obiter* in the case of *Reeves* v. *Hager,* 101 Tenn., 712, would, there is every reason to believe, have been resolved by him in favor of this view had the question been directly presented to him and full consideration given to the legislative history of the provision. The insertion of the words "inclusive of a mother-testator" in the Code of 1932 was explana-

tory of the law as it already was and was not a change of the law. This assignment is overruled.

## III.

The sum of the other assignments is that the Chancellor erred in finding upon the facts that George C. Paschall, Jr. was not disinherited by the will and that therefore he' took title to the lands under the Code provision.

It is stipulated that no provision for her son was made by Mrs. Paschall either in her will or by a settlement made by her in her lifetime.

 Disinheritance may result in two ways, viz: from express words of disherison in the will, or by unavoidable inference, to use the words employed in the case of *Reeves* v. *Hager, supra,* or necessary implication, to use the term employed in *Fleming Admrx.* v. *Phoenix Trust Co.,* 162 Tenn., 511, 514. There are no words of disherison to be found in the will of Mrs. Paschall, and the first question is, from what source may an inference of an intention to disinherit an after born child be drawn? The mere pretermission or omission of the after born child in the will clearly does not without more warrant such an inference, for to say that it did would be to say that the words ''nor disinherited'' in the Code provision are superfluous. Counsel for appellant King admits this, but he insists that in construing any will the existing facts and surrounding circumstances may be showed and that from such facts and circumstances plus the pretermission or omission of the child in the will the' intention to disinherit may be made to appear as an unavoidable inference. Counsel for the heirs at law insist on the

other hand that the basis for the inference of an intention to disinherit the after born child must be found in the language of the will itself, and that the mere pretermission of the child does not afford ground for the consideration of facts shown by evidence *dehors* the will.

This insistence of counsel for the heirs at law is not sustained. In each of the cases just referred to there was held to be an unavoidable inference of an intention to disinherit an after born child, and the fact from which the inference was implied was one which was entirely outside of the will and not therein referred to directly or indirectly. That fact in each of said cases was the existence of living children born before the making of the will, who were likewise pretermitted in the will. It is true that in the Reeves case the will contained words which showed an intention to exclude the children born or unborn, but in the case of *Bowerman* v. *Burris,* 138 Tenn., 220, this Court in referring to the Reeves case as a strong case showing that a will merely omitting the name of a child is a disinheritance added:

"A very strong case showing that a will merely omitting the name of a child is a disinheritance is *Reeves* v. *Hager,* 101 Tenn., 714, 50 S. W., 760. In that case it appeared that the wife made a will devising all of her property to her husband, making no mention of her children. The will was executed April 1, 1878, and she died in November, 1879. At the date of the execution of the will she had one living child, aged about four years, and, at her death, left another child aged about three weeks. Under our statutes a will speaks as of the date of the testator's death; so in this case it appears that the mother, by failing to mention her two children, disinherited them in favor of their father."

In the Fleming Case, the disposing words of the will were:

"I direct that all my debts shall be paid out of the proceeds of my life insurance.

"All the remainder of my property after payment of my debts I give to my wife, Eugene Algeo Fleming."

In determining the rights of a child born after the making of said will, this Court, speaking through MR. JUSTICE COOK, said:

"The will cannot be read without perceiving that the dominant purpose of the testator was to subject the life insurance to payment of his debts and confer the remaining portion of his entire estate, real and personal, upon his widow, the mother of his children, to the exclusion of any child or children then living or afterwards born. Without children living when the will was executed, it could not be implied that he had this class of dependents in mind. But two children were then living. The claimant was born only a few months afterwards and nearly nine years before the testator's death. We are not left to conjecture about the father's intention which was to confer the estate upon his wife to the exclusion of his children, subject to the rights of creditors, relying upon his wife's motherly care to provide for their children. The children were as effectively disinherited by the provisions of the will which passed the estate to the widow as if done by particular reference to each child."

Counsel for the other heirs at law point to the statement appearing in the above quotation, viz: "Without children living when the will was executed, it could not be implied that he had this class of defendants in mind," and insist that it sustains their contention. On the con-

trary it shows that the intention to disinherit may be implied from a fact not alluded to in the will but appearing from the proof. Nor does it show that the existence of another child or children is the only fact that could be so proved for said purpose, but that this was the only and sufficient fact proved in that particular case from which the intention to disinherit could be implied.

In the instant case the following further facts appear by stipulation:

The land in question represented Mrs. Paschall's interest in the estate of her deceased mother. The appellant, W. E. King, was her full brother, while the other heirs at law bore no relation to her mother. Her son, George C. Paschall, Jr., was born four months after she made her will, and his birth must have been expected by her at the date of her will. At that date Dr. Paschall was a man of large means, owning lands and personal property of a value in excess of $25,000, and had a lucrative medical practice, which was growing larger every year. At the date of Mrs. Paschall's death in 1918, he was worth probably $50,000 on the basis of existing values. These facts were known to Mrs. Paschall. The lands in question represented investments of but little more than $3,000. Both Doctor and Mrs. Paschall were devoted to their son. While the fact is not affirmatively shown, it is to be inferred, that George C. Paschall, Jr., was also the only child of Dr. Paschall. Upon the death of Mrs. Paschall her personal estate passed to Dr. Paschall, *jure mariti*. Upon the latter's death he willed his entire estate to the son. After the birth of her son, Mrs. Paschall preserved her will among her valuable papers for twelve years until her death.

The Court is of opinion that the preservation of

her will by Mrs. Paschall for this long period, in connection with the facts aforesaid, leads unavoidably to the conclusion that she intended her land to go as provided in her will and thereby to disinherit her son. The Chancellor's decree is reversed and the bill dismissed.