W. W. CHUMBLEY, *et al.*, COMPLAINANTS, APPELLANTS, *v.*
PEOPLES BANK & TRUST CO., *et al.*, DEFENDANTS, AP-
PELLEES.

(*Nashville,* December Term, 1932.)

Opinion filed May 20, 1933.

J. J. FINLEY and J. A. CHUMBLEY, for complainants, appellants.

ROBT. L. KEELE, for defendants, appellees.

WM. L. FRIERSON, CHAS. N. BURCH and CHAS. C. TRABUE, *Amici Curiae.*

MR. JUSTICE COOK delivered the opinion of the Court.

October 9, 1926, complainants executed a deed of trust to secure their note of $3180, payable twelve months after date, to Peoples Bank & Trust Co., and on February 4, 1928, executed another deed of trust to secure another note, payable ninety days after date, to the bank. In November, 1931, the bank caused the trustee to advertise the property for sale under the deeds of trust.

The complainant filed the bill to enjoin enforcement of the deeds of trust alleging violation of an agreement to extend payment of the debts. It was charged that in consideration of the payment of $1351.78 on October 25, 1930, by their son, Frank Chumbley, the bank agreed to indefinitely extend the date of the maturity of the mortgage debts. A statement in the record shows that $1021.78 of the sum paid October 25 was applied to taxes and past due interest and the balance of $330 credited on the $1876.80 note.

The bill and answer presented the question of whether the bank agreed to indefinitely postpone payment of the notes, and if so whether it violated the agreement by the steps taken to enforce payment commenced after the lapse of one year.

When called for hearing at the regular May term, 1932, complainants moved to continue the case to procure evidence of bankers and business men to rebut defendant's proof that a reasonable time elapsed after the

alleged agreement before the attempt was made to collect the debts.

The chancellor refused to continue the case until the next term of court, but allowed complainants twenty days to take depositions of witnesses in rebuttal and ordered the cause set down for hearing at chambers, upon five days' notice, given after expiration of the twenty days allowed to take the rebuttal evidence. The cause was heard at chambers in Winchester. The chancellor found that the bank did not extend maturity of the notes but merely agreed to indulge complainants, and said whether an indulgence or an indefinite extension of time, it appeared from the evidence that a reasonable time, more than a year, had elapsed, followed by notice to complainants August 16, 1931, of the purpose to enforce payment. He dissolved the injunction and dismissed the bill. Final decree upon the hearing at chambers was subsequently entered on the minutes of the chancery court at Manchester and from that decree complainants appealed.

They insist that the chancellor erroneously refused to continue to the next regular term, and illegally set the cause for hearing and disposed of it at chambers.

The record indicates no arbitrary action or abuse of discretion by the chancellor. The bill was filed December 7, 1930. It was answered January 20, 1931. Complainants' depositions were filed May 9, before the regular May term May 16. The defendants filed their depositions May 11. The object of a continuance was to enable complainants to procure evidence in rebuttal as to what would be reasonable time, assuming the agreement to indefinitely extend payment of the debts. There is no showing that complainants could not have procured the evi-

dence in rebuttal within the time allowed. The cause was not heard until June 25, and so far as the record shows complainants were afforded sufficient time to procure the desired evidence. On appeal the chancellor's exercise of discretion cannot be reviewed in the absence of a showing that he abused it.

Before the Code of 1932, jurisdiction over trials at chambers rested on consent. Chapter 248, Acts of 1903, an Act to expedite litigation in chancery courts, as amended by chapter 427, Acts of 1905, empowered chancellors "to hear and determine in vacation and at chambers questions arising on demurrer, dilatory pleas, motions, and applications to amend pleadings . . . and hear and determine by final decree any cause when the parties,.or their solicitors, consent to such hearing."

This Act was bodily carried into section 10500 of the Code, coupled with the additional words *"or the court provides for it by order. If the parties do not consent, then the parties desiring such action shall give notice in the same manner as provided in matters of motion to dissolve injunction."*

It is urged by complainants (1) that the chancellor could not set the cause for hearing at chambers without first entering an order as provided by section 10498 of the Code, designating his chambers for the hearing of chambers cases in the chancery division. (2) That sections 10498, 10499 and 10500 are not the law because the Act adopting the Code was passed contrary to Article II, Section 17, and Article II, Section 18, of the Constitution, hence the Code and all of its provisions are void.

As to the first proposition: Sections 10498 and 10499 and the addition to section 10500 are not codifications of preexisting statutes. They originated with the Code as

did the additional words in section 10500, but they were not incongruous changes. They brought the practice and procedure in courts of chancery into conformity with existing conditions and practices.

It does not appear from the record whether or not the chancellor designated his chambers as provided by section 10498, but without an affirmative showing to the contrary we are bound by the presumption that he did not act illegally and that he did, by appropriate order pr - viously entered on the minutes at Manchester, designate Winchester as the place of hearing chambers cases in the chancery division.

Referring to the second proposition that the Code enactment is void, the bill "entitled an Act to revise and codify the general and public statutes of the State of Tennessee" was introduced in both the House and Senate, and passed both Houses on first reading January 13, and second reading January 14. The bill in the Senate passed third reading June 17. The Senate bill, after passing third reading in the Senate, came over to the House in due course of legislative procedure and was substituted for the similar House bill and on June 24 passed third reading in the House.

This legislative practice and procedure was, long ago, held to be in accord with the constitutional provision regulating the passage of Acts. *Archibold* v. *Clark,* 112 Tenn., 532. The recitals in the Journal do not contradict, but support, the presumption that the legislature did not disregard the procedural requirements of the Constitution in passing the Act. They show its passage in each House on three separate readings, show the signatures of the Speakers made in open session, and show

approval of the Governor, as required by the Constitution.

The presumption attending the regularity of such procedure overcomes objections unsupported by any affirmative showing to the contrary. See *Home Telephone Co.* v. *Nashville,* 118 Tenn., 1, and upon other contentions of complainants as to the slight variance between the caption of the House and Senate bills corrected by amendment before passage, see *State* v. *McConnell,* 3 Lea, 341; *State ex rel.* v. *Algood,* 87 Tenn., 163; *Richardson* v. *Young,* 122 Tenn., 564; *Jackson* v. *Manufacturing Co.,* 124 Tenn., 121, and *Nelson* v. *Haywood County,* 91 Tenn., 596. It does not appear that the legislature violated Article II, Section 18, of the Constitution in the enactment of the Code.

But it is said, by enacting the Code under the title quoted and by including in the body varied subjects, and amending some statutes and repealing others, that Article II, Section 17, of the Constitution was violated. We quote that section:

"No bill which becomes a law shall embrace more than one subject, that subject to be expressed in the title. All Acts which repeal, revive or amend former laws shall recite in their caption or otherwise, the title or substance the law repealed, revived or amended."

This section was not designed to embarrass legislation and defeat the beneficial purpose for which it was adopted. *Goetz* v. *Smith,* 152 Tenn., 451, 278 S. W., 417.

As said in *Davis* v. *Haley,* 143 Tenn., 252, "if the various provisions of an Act are directed toward a common purpose, and that purpose is expressed in the title, it would make no difference if the several provisions of the Act involved all the powers of a legislature." And

further that Article II, Section 17, "imposes no restriction upon the powers exerted nor upon the commingling of such powers so long as the provisions of the statute are not incongruous and are germane to the subject expressed in the caption." Of similar import are our cases of *Cannon* v. *Mathes,* 8 Heisk., 504; *Kizer* v. *State,* 140 Tenn., 591, and *House* v. *Creveling,* 147 Tenn., 598.

*House* v. *Creveling* involved an Act to reorganize administration of the State government and through consolidation to provide economy and efficiency of the government; to create departments and offices, prescribe their powers and duties; to fix salaries, and abolish offices, boards, commissioners, and other agencies, and to repeal conflicting Acts.

After speaking of the title and body of the Act, the court said "We cannot see that an Act which undertakes to reorganize the administration of the State is omnibus legislation, although it may affect sixty officials, so long as unity of purpose is preserved."

For cases involving the validity of Code enactments under a general title see *Lewis* v. *Dunne,* 55 L. R. A., Note D, p. 836; *Central of Georgia R. Co.* v. *State* (Ga.), 42 L. R. A., 518; *State* v. *Habig* (Ohio), 140 N. E., 195.

■ A code is the collection and compilation in logical and concise form of all the general statutes of the State, and these statutes may be incorporated in a code under a title expressing the purpose to enact a code. Such a title suggests but one purpose—gathering up, co-ordinating and making ready for convenient use all the general statutes of the State. That was done in this codification Act.

■ The title of the Act relates to the single subject of codification of the statutes, collecting and compiling in logical and concise form the statutes, expressing the jural

sense of the State. The title, though comprehensive, nevertheless relates to the unified object of codification and necessary revisal of statute laws. While the several sections of the Code are not germane when the sections are isolated and considered separately, when they are taken altogether as necessary parts of the system of statute law, they relate to the single subject, the revisal and codification of the general statutes, expressed in the title.

In 25 R. C. L., 867, it is said:

"It has generally been held that codes and compiled or revised statutes intended to express either the whole of the general laws of a state, or of some great subdivision of such laws, may be adopted by one act under a general title without violating a constitutional provision prohibiting the enactment of any bill containing more than one subject and requiring that subject to be expressed in the title. . . . Any construction of these constitutional provisions that would interfere with the very commendable policy of incorporating the entire body of statutory law on one general subject in a single act, instead of dividing it into a number of separate acts, would not only be contrary to its spirit but also seriously embarrassing to honest legislation. All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject."

This statement of the rule carries no implication suggestive of legislative power to violate the constitutional inhibition against surreptitious enactments under the guise of codification. The legislature could not enact, and the judicial department could not sustain, laws under the guise of a code enactment, designed to test the people's endurance of punishment through sudden or

radical change; they could not enact incongruous laws, nor intrude strange ones by repeal and amendment. That was not done in the revisal and codification of the statutes embodied in the Code of 1932. We find no error on the record.

Affirmed.