MARSHALL v. MARSHALL.—156 S. W. (2d) 450.

Middle Section.   November 1, 1941.

Petition for Certiorari denied by Supreme Court, December 13, 1941.

310

William A. Guild, of Nashville, for plaintiff in error.

Bass, Berry & Sims and J. O. Bass, all of Nashville, for defendant in error.

FELTS, J. Georgia E. Marshall, widow and administratrix, with the will annexed of R. D. Marshall, deceased, filed the bill herein for a construction of his will and a determination of the rights of herself and their adopted child, Katherine Cartwright Marshall, in his estate.

Mr. and Mrs. Marshall were childless. In January, 1937, they took this child from the Tennessee Children's Home Society, under a written agreement to adopt her at the end of a trial period of one year. They kept and cared for her as their own child until February 21, 1938, when they adopted her by decree of the county court of Davidson County. This decree adjudged: ". . . that petitioners (Mr. and Mrs. Marshall) be given the full right to the parental care,

custody, and possession of said child; that from this date said child, to all legal intents and purposes, be adopted by petitioners as their own, and vested, to all legal intents and purposes, with the right of succession and inheritance, as if born to petitioners; and that said child bear the name of Katherine Cartwright Marshall, and be so known and designated, with the right to sue and be sued in said name.''

They continued to keep and treat her as their own child until Mr. Marshall died, May 29, 1941, and she has since remained with Mrs. Marshall. She is now fourteen years of age. On February 19, 1938, two days before the adoption, Mr. Marshall made a will as follows:

''February 19, 1938.

''I leave to my wife Georgia E. Marshall all of my property both real and personal.

''R. D. Marshall.''

He kept this will until his death, without changing it, or making any provision for the adopted child. It was probated as a holographic will; and Mrs. Marshall qualified as administratrix with the will annexed. The estate consists of a small amount of cash, an automobile, a farm in Davidson County, and some farm equipment. The farm and equipment are encumbered by a deed of trust executed by Mr. and Mrs. Marshall to secure his debts, which are in excess of $12,000. He had $7,500 insurance on his life, payable to Mrs. Marshall, and they had also assigned that to secure his debts. The record does not show the value of the farm or equipment, or what will be the net value of the estate.

The theory of the bill was that defendant, being an adopted child, could not share in the estate as an after-born pretermitted child, and that the will disinherited her and gave all the property to complainant. Defendant and her guardian ad litem filed formal answers, submitting her rights to the protection of the court. The chancellor sustained both contentions of complainant, and decreed that she took the entire estate remaining after paying the debts.

The guardian ad litem appealed. He insists that the adoption of the child by Mr. Marshall after making this will so far revoked the will that the child shares in his estate as if he had died intestate. The argument is that an after-adopted child stands on the same footing as an after-born child under Code section 8131. This section is: ''A child born after the making of a will, either before or after the death of the testator, inclusive of a mother-testator, not provided for nor disinherited, but only pretermitted, in such will, and not provided for by settlement made by the testator in his lifetime, shall succeed to the same portion of the testator's estate as if he had died intestate. (1823, ch. 28, sec. 1, Modified.)''

For appellee it is contended that this section by its very terms is restricted to children ''born,'' and cannot be extended to

children adopted, after the making of a will. Such would undoubtedly be its meaning, if it stood to be interpreted alone and by itself. Also it may be conceded that when the original act of 1823, the prototype of section 8131, was passed it could not include a child adopted as well as "a child born;" for there was then no provision of law in this State for the adoption of children. The first provision for adoption of children was Chapter 338, Acts of 1851-52. But both of these provisions, that for after-born pretermitted children and that for adoption of children, were brought forward in the Code of 1858 (secs. 2193, 2194 and 3636, 3643-3645) and later in the Code of 1932 (secs. 8131, 8132 and 9561, 9568-9570). Upon their reenactment as parts of the Code, which was a single legislative act, these separate provisions became related and should be interpreted as parts of this act. McMinnville & Man. R. R. Co. v. Huggins, 47 Tenn. (7 Cold.), 217, 229; Whitworth v. Hager, 124 Tenn., 355, 360, 140 S. W., 205, 206; Sharp v. C. N. O. & T. P. Ry. Co., 133 Tenn., 1, 16, 179 S. W., 375, 379, Ann. Cas. 1917C, 1212; Faulkner v. City of Nashville, 154 Tenn., 145, 156, 285 S. W., 39, 42; Chumbley v. People's Bank & Trust Co., 166 Tenn., 35, 42, 60 S. W. (2d) 164, 166. The statutes of adoption and of descent and distribution must be read together. Meriwether v. Fourth & First B. & T. Co., 153 Tenn., 696, 698, 285 S. W., 34, 35. Also these statutes and sections 8131 and 8132 are in pari materia and must be read and construed together as one system. In re Book's Will, 90 N. J. Eq., 549, 553, 107 A., 435, 437.

Code section 9568 provides that any person wishing to adopt another as his child shall apply by petition, signed by the applicant, setting forth the reasons therefor, and the terms of the proposed adoption. Section 9569 provides that the court (circuit, probate or county), if satisfied with the reasons given, may sanction the adoption by decree, entered on the minutes, embodying the petition, and directing the terms of the adoption. Section 9570 is as follows: "The effect of such adoption, unless expressly limited by the judgment or decree, is to confer upon the person adopted, all the privileges of a legitimate child of the applicant, with capacity to inherit and succeed to the real and personal estate of such applicant, as heir and next of kin; but it gives to the person seeking the adoption no reciprocal rights of inheritance and succession, nor any interest whatever in the estate of the person adopted. (Ib., Modified.)" (1851-52, ch. 338, sec. 2.)

Learned counsel insist that statutes of adoption, being in derogation of the common law, are to be strictly construed against the adopted child; that though our statutes do confer upon an adopted child all the privileges of inheritance and succession which a legitimate child of the adopting parent would have in case of the parent's intestacy, they do not confer upon the adopted child the additional right which section 8131 confers upon an after-born pretermitted

child; and that this section should be construed to embrace only children "born," and not children adopted, after the making of a will.

It is true the general rule is that statutes of adoption are to be strictly construed against the adopted child. Magevney v. Karsch, 167 Tenn., 32, 45, 65 S. W. (2d), 562, 567, 92 A. L. R., 343, 352, and cases there cited. But this rule of strict construction has been applied only in cases involving the right of the adopted child to inherit from relatives of the adopting parent. It has been held that such child does not inherit from the father, the child or the collateral relatives of the adopting parent. Helms, Adm'r, v. Elliott, 89 Tenn., 446, 14 S. W., 930, 10 L. R. A., 535; Taylor v. Taylor, 162 Tenn., 482, 40 S. W. (2d), 393; Buntin et al. v. Plummer et al., 164 Tenn., 87, 91, 46 S. W. (2d), 60, 61. But so far as the right of an adopted child to inherit from the adopting parent is concerned, construction has been liberal rather than strict. It has been held that an adopted child takes as "issue" of the adopting parent, under Code section 8134, providing that a devise or legacy shall not lapse by reason of the death of the devisee or legatee before the death of the testator, but shall go to the "issue" of such devisee or legatee (Craft v. Blass, 8 Tenn. App., 498); and that the children of a deceased adopted son inherit from his adopting mother. Meriwether v. Fourth & First B. & T. Co., 153 Tenn., 696, 285 S. W., 84; Buntin et al. v. Plummer et al., supra. In Helms, Adm'r, v. Elliott, supra, the court said:

"As between the adopting parent and the adopted child the statute declares in the plainest terms that the adopted child shall, by the act of adoption, assume all the rights of a child born to such parent.
. . .
"It is contended that the legal status of the adopted child is the same as that of the child born in lawful wedlock, and that, as a consequence, the same rights of heir and next of kin exist in one case as in the other, not only as to the parent, but as to all other persons. This position is sound in part only. So far as the parental obligation and the estate of the adopting parent are concerned, it is well taken, but beyond that it is not tenable."

The foregoing was quoted with approval in Taylor v. Taylor, supra. Thus, so far as the estate of the adopting parent is concerned, "the legal status of the adopted child is the *same as that of the child born in lawful wedlock*" to the adopting parent. In the present case Mr. and Mrs. Marshall in their petition prayed, among other things, "(2) That the Court decree that said child be adopted by them as their own, with the right to inherit and succeed to their estates, both real and personal, as if born to them;" and, as we have seen, the court decreed that said child "be adopted by petitioners as their own, and vested, to all legal intents and purposes, with the right of succession and inheritance, as if born to petitioners." Under this decree

and the adoption statutes, as they are construed in the above decisions, we think the adopted child acquired the same legal status as if she had been born in lawful wedlock to petitioners, and that under section 8131 she stands on the same footing as if she had been born to Mr. Marshall after the making of his will.

Statutes like sections 8131 and 8132 have been passed in most of the states of the Union. The general rule at common law was that, while marriage and birth of a child revoked a will made before such marriage (Frank v. Frank, 170 Tenn., 112, 92 S. W. (2d), 409), birth of a child alone did not. Pritchard on Wills and Administration (2 Ed.), sec. 292; Page on Wills (1941 Ed.), sec. 525. Such statutes were passed to obviate this rule and to prevent inadvertent disinheritance. Pretermitted Heirs: An Analysis of Statutes, by Robert Elden Matthews, 29 Columbia Law Review, 748-780; Fleming, Adm'x v. Phoenix Trust Co., 162 Tenn., 511, 39 S. W. (2d), 277. Also in most of the states adoption statutes have been passed. While these statutes differ in their phraseology, most of them give an adopted child the same legal status as if born to the adopting parents. While there are some cases to the contrary, the weight of the authority is that under such statutes an adopted child is within the benefits of a statute, such as ours, providing for afterborn pretermitted children. In re Rendell's Estate, 244 Mich., 197, 221 N. W., 116; In re Book's Will, 90 N. J. Eq., 549, 107 A., 435; Grimes v. Jones, 193 Ark., 858, 103 S. W. (2d), 359; In re Guilmartin's Estate, 156 Misc., 699, 282 N. Y. S., 525, affirmed 250 App. Div., 762, 293 N. Y. S., 665, affirmed 277 N. Y., 689, 14 N. E. (2d), 627; Alexander v. Samuels, 177 Okl., 323, 58 P. (2d), 878, 105 A. L. R., 1171. See the cases collated in the Annotation in 105 A. L. R., 1176.

For appellee it is insisted that, if section 8131 may be so construed as to include an adopted child, this statute cannot operate in this case because the child was disinherited in the will. It is said that the testator's intent to disinherit her is an unavoidable inference from the will, construed in the light of the circumstances attending the making of the will.

This child had been living in testator's home and as part of his family for more than a year. From the first he and his wife had intended to adopt her, and they were under a written agreement to do so at the end of a year. He made the will only two days before, and probably in anticipation of, the consummation of the adoption by the entry of the decree. He wrote the will himself, doubtless without the aid of legal advice. He made two races for Sheriff of Davidson County and held that office at the time of his death. His property and life insurance were largely encumbered for his debts. He repeatedly stated to his wife and other parties that he wanted her to have all the property and expected her to take care of the child. After the

adoption he kept the will for over three years and three months until his death.

At common law there was no distinction between pretermitting and disinheriting a child. To will one's estate to another than his child was a disinheritance of such child, whether born before or after the making of the will. But section 8131 makes such distinction in behalf of afterborn children. This upon the idea that at the time of making the will the testator might have had no intention to exclude them from sharing in this estate. He is still free to exclude them, if he so intends. The statute raises a presumption against such an intent, but does not prescribe the quantum of evidence necessary to overcome such presumption, or how the intent to disinherit shall be evidenced. The decisions, however, have declared certain principles to aid in the construction of a will under this statute. The testator's oral declarations as to his intent cannot be received. Burns v. Allen, 93 Tenn., 149, 23 S. W. 111. But other extrinsic evidence is admissible to aid in the construction of the will and to show that the pretermission or omission was intentional. Woerner, American Law of Administration (3 Ed.), 161; Reeves v. Hager, 101 Tenn., 712, 716, 50 S. W., 760. 761; Fleming, Adm's, v. Phoenix Trust Co., 162 Tenn., 511, 512, 39 S. W. (2d), 277; King v. King, 166 Tenn., 115, 59 S. W. (2d), 510. Disinheritance may be evidenced by express words, or by unavoidable inference, or necessary implication. King v. King, supra.

In Fleming, Adm'x, v. Phoenix Trust Co., supra, the testator made his will and died eight years later. When the will was made he had a wife and two children. About eight months later the third child was born. His will provided:

"I direct that all of my debts shall be paid out of the proceeds of my life insurance policies.

"All of the remainder of my property after payment of my debts I give to my wife, Eugene Algeo Fleming."

The testator's estate was insolvent and only part of the proceeds of the insurance remained after payment of the debts. The Court held that the will evidenced the testator's intent to disinherit all his children, including the after-born one, and to give to the wife all of the insurance money after payment of his debts.

In King v. King, supra, Mrs. Paschall died in 1918, leaving a will which she had made December 6, 1905. This will gave her husband a life estate in her land, with remainder to her brother, W. E. King. Four months after making this will she had a son born. The Court held that the testator's intent to disinherit the child appeared as an unavoidable inference from the will, construed in the light of extrinsic facts there appearing. Such facts were that the land represented Mrs. Paschall's interest in the estate of her deceased mother. W. E. King was her full brother, while she had some half brothers and sisters who were no kin to her mother. Her husband, Dr. Paschall,

was a man of large means and Mrs. Paschall's land was of small value. These facts, together with the fact that she must have expected the birth of a child when she made the will and the fact that she kept the will for 12 years after such birth until her death, were held to evidence her intent to disinherit the son.

In the present case we think the facts above related quite as strongly evidence the testator's intent to disinherit the child as did the facts in the Fleming and King cases, supra. As stated, the testator was under an agreement to adopt the child, knew he was going to do so, and evidently wrote his will with that event in mind, only two days before the adoption. His estate was heavily encumbered, and his will shows that he meant to give to his wife all that should remain after paying his debts. He kept the will three years and three months after the adoption and until his death. Upon the authority of the cases above cited, we think the will sufficiently evidenced an intent to disinherit the child.

For these reasons the decree of the Chancellor is affirmed. The costs of the appeal will be paid by the administratrix.

Crownover, P. J., and Howell, J., concur.