STEPHENS et al. v. STEPHENS et al.   No. 1.—185
S. W. (2d) 915.

Eastern Section.   November 14, 1944.

Petition for Certiorari denied by Supreme Court, February 3, 1945.

Grimm & Tapp, of Knoxville, for appellants.

C. S. Harris and Witt & Bratton, all of Madisonville, for appellees.

McAMIS, J. This case presents a contest between the surviving second wife of H. C. Stephens and four daughters of that marriage, complainants herein, and the defendants below, children of a former marriage. Rebecca Stephens, the widow, seeks to establish homestead and dower rights and the four daughters to establish their rights as pretermitted children of H. C. Stephens, deceased.

The Chancellor held that the widow had waived her homestead rights but was entitled to dower in the proceeds of realty to be sold for partition. The other complainants, daughters of the second marriage, were held entitled to share equally with brothers and sisters of Charles W. Stephens, a devisee under the will, but not

entitled to share in the estate of their father as pretermitted children. Other disputed matters involve an accounting between the widow and her step-sons which are disposed of in a portion of this opinion not for publication. Only the complainants have appealed.

On January 28, 1902, H. C. Stephens, then a widower with eight living children, six sons and two daughters, made a will, devising all of his real estate to his six sons upon condition that they pay $250 to each of the two daughters. (This provision was fully complied with after the death of H. C. Stephens.) On July 12, 1904, more than two years after the execution of the will, H. C. Stephens married the complainant Rebecca Stephens and to this union four daughters, complainants herein, were born, the youngest on February 12, 1910. The daughters were living with their mother and father on what is known as the Sink Place at the death of the father in 1921 and continued to reside there for various periods of time. All had moved away, however, when the bill was filed and the widow was living in Polk County, Tennessee.

The proof shows that D. B. Stephens, a half-brother of the testator, drew or assisted in drawing the will. From the date of its execution it remained in the possession of D. B. Stephens, named as executor of the will. It was never in the possession of the testator. There is no proof that he ever gave the will further thought and, on the contrary, there is some proof that he was under the impression that the daughters of the second marriage would share in his estate under the laws of descent and distribution.

The will was probated shortly after the death of H. C. Stephens and, on August 31, 1923, apparently at the in-

stance and request of the executor and the sons of the first marriage, the widow entered into the following agreement:

"Citizens Bank & Trust Company

"Tellico Plains, Tenn.,

"August 31, 1923

"I, Rebecca Stephens, widow of the late H. C. Stephens, deceased, agree to take one-third of all rents raised on the farm where the late H. C. Stephens died, and the farm where J. M. Stephens now lives on Cane Creek, for my homestead and dower rights and allow the sons of the said H. C. Stephens to take charge of the farms and work or rent said lands to the best interest of all concerned.

"The said sons, Milton, Anderson H., Ben H., H. Clay, and Sam E. Stephens are to furnish the said Rebecca Stephens a reasonable amount of barn room, in the barn on the home place, if she should need the room.

"Should the said sons wish to sell the farm on Cane Creek, they agree to pay Rebecca Stephens a reasonable amount, such as the parties may agree upon for her dower rights on that farm.

"Further, the said Rebecca Stephens assumes the payment of one-third the taxes on said farms.

"Rebecca Stephens,

"Sam' E. Stephens,

"D. B. Stephens,

"Administrators.

"James G. Mitchell, a Notary Public..

"Subscribed before me this August 31, 1923.

" (Seal)          James G. Mitchell,

"Notary Public."

The proof is that the only farm owned by H. C. Stephens in its entirety was the Cane Creek farm on which J. M. Stephens, a son-in-law, was living at his death.

He owned a three-fourths undivided interest in the Sink farm and he and his wife each owned an undivided one-half interest in the farm known in the record as the Akin Farm. It thus appears that the only property out of which the widow could claim homestead was the Cane Creek farm and the Chancellor held·that the language of the above-quoted instrument was sufficient to amount to·a waiver or release of homestead rights in that farm. We turn first to this question.

■■ As already noted, after the death of her husband, Mrs. Stephens entered into the agreement above quoted. Apparently this was done at the instance of the executor and her step-sons. Or, as we find the facts, Mrs. Stephens was at least relying upon advice from the executor and we think, under the circumstances, and especially the circumstance that the instrument was drawn by the executor, any ambiguity should be resolved in her favor. Another principle having application is that in order to make out a case of abandonment or waiver of a legal right there must be a clear, unequivocal and decisive act of the party, showing such purpose, or acts amounting to an estoppel on his part.. See Prewitt v. Bunch, 101 Tenn. 723, 50 S. W. 748; Masson et al. v. Anderson, 62 Tenn. 290.

■ With these principles in mind we find ourselves unable to agree with the conclusion of the learned Chancellor with respect to the homestead rights of the widow. We think the writing contemplates nothing more than an arrangement whereby the two farms might be operated to the mutual advantage of the widow and the heirs. The language, to say the least, is not appropriate for an absolute divestiture of the homestead right and a year or· two after this instrument was executed the parties entered into an agreement in parol to the effect that the

64

widow was to receive, in lieu of rents on the Cane Creek farm, the sum of $25 annually. The farm was shortly thereafter sold and Mrs. Stephens joined in the execution of that deed without receiving anything for her homestead though she continued to receive $25 annually from the heirs. This deed was not recorded until shortly before the filing of the bill and Mrs. Stephens says she has no recollection of having executed it. Doubtless, however, she did execute the deed as she did other instruments without questioning the good faith of the executor or of her step-sons. It is agreed by all parties to this suit that the purchaser of the farm will not be disturbed in his title or possession and that the parties will litigate the matter between themselves.

We do not think there should be read into this agreement a sale of the homestead right in the absence of appropriate language. It should be construed as in the nature of a lease of the homestead to "allow the sons of the said H. C. Stephens to take charge of the farms and work or rent said lands to the best interest of all concerned." We think this is clearly one permissible construction of the contract and being the one most favorable to the widow, under the principles of construction above referred to, the ambiguity should be resolved in her favor. Treating the agreement as in the nature of a lease contract, there being no time stipulated for its duration, we think it should be construed as running from year to year and terminable at the end of any year by either party. Williams v. Apothecaries Hall Co., 80 Conn. 503, 69 A. 12; Brackin v. Desverges, 18 Ga. App. 265, 89 S. E. 303; Faucett v. Northern Clay Co., 84 Wash. 382, 146 P. 857; Second National Bank of Beloit v. O. E. Merrill Co., 69 Wis. 501, 34 N. W. 514.

We, therefore, conclude that the widow is entitled

to recover the value of her homestead rights in the Cane Creek farm, commuted and calculated on the basis of her age at the date of its sale to J. M. Stephens in 1924 but, since she has been receiving an agreed sum annually, this recovery will be without interest.

██ After careful consideration we also find ourselves unable to agree with the conclusion of the learned Chancellor that the children of the second marriage are not entitled to share in the estate of their father as pretermitted children.

Code, Section 8131 provides: ''A child born after the making of the will, either before or after the death of the testator, inclusive of a mother-testator, not provided for nor disinherited, but only pretermitted, in such will, and not provided for by settlement made by the testator in his lifetime, shall succeed to the same portion of the testator's estate as if he had died intestate.''

It was to provide for just such a case as the one now before the court that this statute was passed. The will was made some two years before the testator was married the second time and there is nothing to suggest that he made the will in contemplation of marriage and subsequent birth of issue. The will was never in his possession thereafter and the executor says he never mentioned it to any one and kept it in a lockbox until after the death of the testator. We find nothing to overcome the presumption that the testator intended to provide for all of his children. Unborn children are not mentioned in the will and there is nothing in its language which might suggest a purpose to exclude them. How can we say with any asurance that the testator, if he ever thought of the will, did not rely upon this statute to equalize the distribution of his estate?

██ ██ It is suggested that Mrs. Stephens owned a

farm in her own right and that this is the reason the will was not changed. We do not think this, standing alone, is sufficient. The statute provides in clear and unambiguous language that the after-born child shall share in the estate of the parent-testator unless such child is (1) provided for, (2) disinherited or (3) "provided for by settlement made *by the testator* in his lifetime." (Emphasis supplied.) To hold that a child, otherwise falling within the provisions of the statute, is disinherited upon the ground alone that the other parent has property, we think would be contrary to both the terms and the spirit of the statute.

In King v. King, 166 Tenn. 115, 59 S. W. (2d) 510, the wealth of the other parent was considered along with other circumstances found to justify the conclusion that the testatrix intended to disinherit her child in favor of her surviving husband. In that case, however, the court concluded that the child was in the mind of the testatrix when the will was executed because it was born only four months thereafter and the will was preserved among the papers of the testatrix until she died some twelve years later. It is significant also that in that case the child was the only child of the testatrix and her husband.

We think Reeves v. Hager, 101 Tenn. 712, 50 S. W. 760, 761, is also distinguishable upon the ground that the will provided that the property of the testatrix should go to her husband if he survived her; otherwise, to her bodily heirs. In view of this language the court said: "This necessarily means that, if the husband survived, he was to take the entire estate, to the exclusion of the child or children; if he did not, the children, born or unborn, were to take." The conclusion reached was based upon the court's finding that the testatrix intended "*by the provisions of her will,* to disinherit her children, whether born or unborn, in favor of her husband, if he survived

her, and to provide for all equally, if she survived him." (Emphasis supplied.)

Fleming, Administratrix v. Phoenix Trust Company, 162 Tenn. 511, 39 S. W. (2d) 277, 278, was another case in which an afterborn child was held not entitled to share in the father's estate, but, in that case, the testator had two living children when the will was executed giving all of his estate to his wife. Summarizing, the court said: "Without children living when the will was executed, it could not be implied that he had this class of dependents in mind but two children were then living. The claimant was born only a few months afterwards and nearly nine years before the testator's death. We are not left to conjecture about the father's intention which was to confer the estate upon his wife to the exclusion of his children, subject to the rights of creditors, relying upon his wife's motherly care to provide for their children. The children were as effectively disinherited by the provisions of the will which passed the estate to the widow as if done by particular reference to each child."

Here the testator's children as a class were not excluded but, on the contrary, the then living children were mentioned by name and given the entire estate. There can be no inference that the testator intended to exclude after-born children or had them in mind in making the testament.

Marshall v. Marshall, 25 Tenn. App. 309, 156 S. W. (2d) 449, is another case in which the statute under consideration was relied upon. In that case the testator made a will giving all of his property to his wife while under an agreement to adopt a child and only two days before the decree of adoption. In an opinion by Judge Felts, King v. King, supra, was followed and the conclusion reached that the will was probably executed in con-

templation of the adoption and sufficiently evidenced an intent to disinherit the child. The distinction between that case and this is twofold: In the first place there is nothing in the present will to evidence an intent to disinherit children as a class by giving the entire estate to one not of that class and, in the second place, there is nothing to show that the will was executed in contemplation of matrimony or the subsequent birth of children.

It is suggested in the answer that the testator purchased a one-half interest in the Akin Farm for the benefit of the daughters of the second marriage but if such was the intention of the testator his intention was not carried out by the execution of a deed or will enforceable at the instance of the pretermitted children. As held in Ensley v. Ensley, 105 Tenn. 107, 58 S. W. 288, where the settlement is dependent upon the bounty of some third person, the child is pretermitted within the sense of the statute.

It results that the decree of the Chancellor with respect to the homestead rights of the widow and the right of the children of the second marriage to share in the estate must be reversed and a decree entered here adjudging their rights.

Except as modified the decree of the Chancellor is affirmed and the cause remanded. It is doubtful if this litigation would have been necessary except for defendants' contention that the widow was not entitled to homestead and that the children of the second marriage were not entitled to share in the estate and, for this reason, all the costs of the cause will be adjudged against defendants Milton Stephens, Henry C. E. Stephens, Samuel Stephens, Anderson Stephens and Benjamin H. Stephens.

Hale and Burnett, JJ., concur.