Harold T. BRUNDIGE, Executor, et
al., Appellants,

v.

Addie Ford ALEXANDER et
al., Appellees.

Supreme Court of Tennessee.

Oct. 4, 1976.

Harold T. Brundige, William Michael Ma-
loan, Brundige & Maloan, P. C., Martin, for
appellants.

Bruce Conley, Maness, Conley & Hayes,
Union City, for appellees.

OPINION

BROCK, Justice.

This is an action to construe a will. On
June 22, 1974, Mrs. Betty Condra, testatrix,
and her husband, R. W. Condra, were killed
when their automobile was struck by a
train on a railroad crossing, the circum-
stances affording no evidence that either
survived the other. Mrs. Condra left a will
in which she made numerous gifts to
churches and individuals and which con-
tained the following residuary clause:

"16th: All of the rest or residue of my estate, I give, devise and bequeath to my dear husband, R. W. Condra, in fee simple and absolutely."

The will contains no provision with respect to the disposition to be made of her estate in the event she and her husband should die in a common disaster.

Mrs. Condra left no children but Mr. Condra is survived by four children of a prior marriage. These children of Mr. Condra, along with the executor of the will, are the plaintiffs in this action and appellants in this Court. As the surviving issue of Mr. Condra, they claim the residuary estate under Mrs. Condra's will by virtue of the antilapse statute, T.C.A. § 32–306, which provides:

"Whenever the devisee or legatee to whom, . . . an immediate devise or bequest is made, dies before the testator, or is dead at the making of the will, leaving issue which survives the testator, said issue shall take the estate or interest devised or bequeathed which the devisee or legatee . . ., as the case may be, would have taken, had he survived the testator, unless a different disposition thereof is made or required by the will."

To render the foregoing statute applicable, it is, of course, necessary to show that the beneficiary "dies before the testator." To accomplish this, the appellants rely upon another statute, the Uniform Simultaneous Death Act, T.C.A. § 31–501 et seq., the pertinent provisions of which are as follows:

"Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this chapter." T.C.A. § 31–502.

Defendants assert that the antilapse statute does not apply since there is no evidence that Mrs. Condra, the testatrix, survived the legatee, Mr. Condra, and that the Uniform Simultaneous Death Act affords no presumption that Mrs. Condra survived Mr. Condra. The trial court agreed with this contention of the defendants and decreed accordingly.

■ Whether or not these two statutes should be construed in the manner and with the result urged by the plaintiffs depends upon the legislative intent embodied in each of them. Since both statutes deal with the devolution of property of decedents, we deem them to be *in pari materia* and will construe them accordingly. See *State v. Hughes,* Tenn., 512 S.W.2d 552 (1974); *Marshall v. Marshall,* 25 Tenn.App. 309, 156 S.W.2d 449 (1941); *Craft v. Blass,* 8 Tenn. App. 498 (1928).

With respect to the purpose and effect of the antilapse statute, T.C.A. § 32–306, this Court in *Weiss v. Broadway Nat'l Bank,* 204 Tenn. 563, 322 S.W.2d 427, 432 (1959) said:

"Under this statute the issue that survives a deceased devisee or legatee takes as the substituted legatee of the deceased ancestor (sic) just as if their names had been inserted in the will by the testatrix herself. This statute is not for the benefit of . . . the dead legatee, but is intended to safeguard the interests of those who take under him.

"The Courts of the Country are at variance as to whether or not a statute of the kind should receive a liberal or strict construction. We think that the Virginia Court in *Wildberger v. Cheek's Ex'rs,* 94 Va. 517, 27 S.E. 441, 443, correctly held in reference to such a statute that:

'The statute is in furtherance of what may fairly be presumed to have been the intention of the testator, and, in order to effect its object, it should be construed liberally.'

"And it was further said in this case in reference to a similar statute to ours, that:

'This section made a sweeping change from the common-law doctrine of lapsed or void legacies, declaring what the law should be in the future in no uncertain language and our courts cannot make exceptions and uphold distinctions where the plain letter of the law recognizes none.'

"In Page On Wills, Lifetime Edition, Vol. 4, Sec. 1422, p. 176, of these lapsed legacy statutes the author has this to say:

'These statutes are said to be based upon the presumption that testator would have made provision for certain relatives of the deceased beneficiary, if his intention had been called to the death of the beneficiary, and he had the opportunity to make such provision.'"

It is clear then that this Court is committed to the policy of giving this statute a liberal construction to effect its obvious purposes and objects. We note that this is also the policy followed by most of the jurisdictions which have similar statutes. *Mathis v. Mathis,* 402 Ill. 60, 83 N.E.2d 270 (1948); *Re Finch's Estate,* 239 Iowa 1069, 32 N.W.2d 819 (1948); *Woolley v. Paxson,* 46 Ohio St. 307, 24 N.E. 599 (1889); *Hester v. Sammons,* 171 Va. 142, 198 S.E. 466 (1938); *Re Dodge's Estate,* 1 Wis.2d 399, 84 N.W.2d 66, 63 A.L.R.2d 1192 (1957).

This Court in *White v. Kane,* 178 Tenn. 469, 159 S.W.2d 92 (1941) in stating the purpose and policy of this statute, had this to say:

"And the primary purpose of these acts was to prevent this lapse of the devise or legacy, and to save it to the representative of the deceased devisee.

"The idea was, inasmuch as an outright gift must have been intended by the testator, to be at the complete disposition of the devisee or legatee, and therefore subject to descend to his issue, if he had any, the gift ought not to lapse in the event of the devisee's or legatee's death before that of the testator, but ought to be saved to his issue, that is, to his representatives in blood.

\* \* \* \* \* \*

"There was a reason, and a sound one, for saving the devise or legacy to the donee's family, for, as pointed out above, it would be in accordance with the testator's intention that an outright gift should be subject to descent from the donee to his heirs and distributees." Id. at 94, 95.

At common-law, the general rule is that where several persons perish in a common disaster, notwithstanding differences of age, sex, and physical strength, there is no presumption as to survivorship, but it is a fact to be proved by the party asserting it. It is not presumed at common-law that one individual survived another, or that they died simultaneously, even in the absence of proof that one survived the other. *McGhee v. Henry,* 144 Tenn. 548, 234 S.W. 509 (1921). Thus, the common-law rule governing the devolution of property of persons who have perished in a common disaster when there is no evidence as to which died first is that the courts will dispose of their property rights as though death occurred to all at the same time. These common-law rules have now been supplanted in this State and in most of the states by the Uniform Simultaneous Death Act. It is true, as insisted by the defendants, that this Act does not afford any presumption as to survivorship between persons killed in a common disaster, *Moore v. Palen,* 228 Minn. 148, 36 N.W.2d 540, 7 A.L.R.2d 1374 (1949), nor does the Act constitute a rule of evidence. *In Re Cruson's Estate,* 189 Or. 537, 221 P.2d 892, 20 A.L.R.2d 219 (1950); it is, instead, a rule of substantive law controlling the devolution of the property of persons who die in a common disaster and there is no sufficient evidence that they have died otherwise than simultaneously.

There can be no doubt that the Uniform Simultaneous Death Statute applies in this case; indeed, defendants urge its application with respect to certain property held by Mr. and Mrs. Condra as tenants by the entireties, discussed hereinafter. The crucial question is whether or not the antilapse statute is applicable to the case. We hold that it does apply, that the mandate of T.C.A. § 31–502 that "the property of each person *shall* be disposed of *as if* he had survived" requires the court in construing Mrs. Condra's will to assume (proceed "as if") that Mr. Condra predeceased Mrs. Condra, the testatrix, thus activating the anti-

lapse statute and making it applicable. In our view, the policy and legislative intent of each of these statutes requires this conclusion.

To our knowledge, the only other case in which this precise issue has been presented is *Mayor and City Council of Baltimore v. White,* 189 Md. 571, 56 A.2d 824 (1948). Therein, the Maryland court reached the same conclusion as we, and, in the course of their opinion, said:

"The City contends that when section 89 (the Uniform Simultaneous Death Statute) is applicable, the lapsed legacy statute is not applicable, because the former is applicable only when there is no sufficient evidence of survival and the latter only when the testator survives. This contention is untenable. Section 89 provides for disposition 'as if' the testator had survived; consequently it incorporates by reference the provision in the lapsed legacy statute *if* the testator survives. The two statutes, thus construed together, may produce a different result than either standing alone." Id. at 826.

See also *In Re Macklin's Will,* 177 Misc. 432, 30 N.Y.S.2d 706 (1941).

Defendants rely heavily upon *Carpenter v. Severin,* 201 Iowa 969, 204 N.W. 448, 43 A.L.R. 1340 (1925). That case is not in point, however, because the Uniform Simultaneous Death Act was not in effect and the court necessarily relied upon the common-law rule that when two persons die in a common disaster the property of each should devolve as if both died at the same instant.

We conclude, then, that the residuary legacy under Mrs. Condra's will passed to the plaintiffs as the surviving issue of Mr. Condra.

At the time of their death, Mr. and Mrs. Condra owned as tenants by the entireties savings certificates worth approximately $40,000.00. Plaintiffs argue that they succeed to Mrs. Condra's interest in these certificates by virtue of the application of the antilapse statute and of T.C.A. § 31–504, another section of the Uniform Simultaneous Death Act, to the residuary clause of her will.

T.C.A. § 31–504, provides:

"Where there is no sufficient evidence that two (2) joint tenants or tenants by the entirety have died otherwise than simultaneously, the property so held shall be distributed one-half (½) as if one survived and one-half (½) as if the other had survived. If there are more than two (2) joint tenants and all of them have so died, the property thus distributed shall be in the proportion that one bears to the whole number of joint tenants."

■ Appellees agree that T.C.A. § 31–504 applies, but contend that the one-half interest of Mrs. Condra "cannot pass under the provisions of her will, as she received the property as a result of the death of the person named in the residuary clause." They argue that "The anti-lapse statute applies to property only in cases where a will is involved. It does not apply to property that does not pass by will. The jointly owned property did not pass by will, and, therefore, cannot be saved by the anti-lapse statute." The error of this argument is that the one-half interest of Mrs. Condra did not come to her as a result of the death of her husband or because of the simultaneous death statute. Her interest in this particular property, as well as the interest of her husband, came by virtue of the original purchase. The simultaneous death statute has merely dictated that, because of the simultaneous death of the tenants, the interest of each of them shall be distributed in the particular manner provided by the Act, rather than devolve as it would have if one of the tenants actually had survived the other.

■ The usual rule that the interest of a tenant by the entireties cannot be passed by will, *Beddingfield v. Estill,* 118 Tenn. 39, 100 S.W. 108 (1907); *Sloan v. Jones,* 192 Tenn. 400, 241 S.W.2d 506, 25 A.L.R.2d 1235 (1951), has no application to this case. Due to the simultaneous death of the tenants, there is no survivor, and, hence, the normal devolution of such property is frustrated.

■ There can be no doubt that T.C.A. § 31–504, controls the disposition of the property held by the decedents as tenants by the entireties; the real issue in this case with respect to the interest of Mrs. Condra in such property is whether it passes under the residuary clause of her will to the surviving issue of Mr. Condra or devolves as intestate property to her distributees. This question is one of first impression in this state.

■ The language employed by Mrs. Condra in the residuary clause of her will, viz., "All of the rest or residue of my estate . . .," is broad and inclusive. We hold that it encompasses the one-half (1/2) interest of Mrs. Condra in the savings certificates which T.C.A. § 31–504 directs "shall be distributed as if" she survived Mr. Condra, the residuary legatee.

■ This Court has long been committed to the philosophy expressed by the late Chief Justice Neil in *Ledbetter v. Ledbetter*, 188 Tenn. 44, 216 S.W.2d 718, 720 (1949):

> "The law presumes that one who undertakes to make a will does not intend to die intestate; 'and the courts will place such a construction upon the instrument as to embrace all the testator's property, if the words used, by any fair interpretation or allowable implication will embrace it.' Sizers Pritchard on Wills, Sec. 386. "A general residuary bequest or devise carries not only property such as the testator did not attempt to dispose of by will but such as was not effectually disposed of. *Reeves v. Reeves*, 73 Tenn. 644–654. "Under a broad general devise 'of property of every kind,' all property of the testator would pass even though the testator had no knowledge of the ownership of it. *Ingham's Estate*, 315 Pa. 293, 172 A. 662, 93 A.L.R. 510; *Verchot's Estate*, 4 Wash.2d 574, 104 P.2d 490."

In *Fehringer v. Fehringer*, 222 Tenn. 585, 439 S.W.2d 258 (1969), language identical to that used in the instant residuary clause was construed. It was held that " 'all the rest and residue of my estate' . . . not only carries to the residuary legatee such of the testator's property as the testator did not attempt to dispose of by his will 'but also such as was not effectively disposed of thereby . . . the presumption being that the testator did not intend to die intestate as to any part of his property . . .' " p. 262. It is our opinion that the decision we have reached upon this issue is consistent with and required by the views expressed in the *Ledbetter* and *Fehringer* cases. See also Page on Wills, Vol. 4, pp. 376–377; 80 Am.Jur.2d, Wills, §§ 1359, 1541, 1543. Of course, it is true that one cannot make a postmortem disposition of property which at the time of his death he did not own, or in which he had no right, legal or equitable. *Re Estate of Braman*, 435 Pa. 573, 258 A.2d 492. But, such is not the case here.

The California Appeals Court has reached a result similar to ours. In *In Re Meade's Estate*, 228 Cal.App.2d 169, 39 Cal.Rptr. 278 (1964), a husband and wife were killed simultaneously in an airplane crash. They owned both joint and community property, but each also had a will. It was argued that the effect of the Uniform Simultaneous Death Act, dealing with jointly owned property was to convert into intestate assets such jointly held property, and that the wills of the decedents were not effective as to those assets. The California court disagreed and held that the one-half (½) interest distributed to the estate of each decedent passed under his or her will.

The decree of the trial court is reversed and the cause is remanded for further proceedings in conformity with this opinion. Costs incurred in this Court will be borne by the appellees.

COOPER, C. J., and FONES, HENRY and HARBISON, JJ., concur.