FRANK *v.* FRANK *et al.*

(*Nashville,* December Term, 1935.)

Opinion filed April 4, 1936.

W. P. COOPER, of Nashville, for appellant.

SEAY, STOCKELL & EDWARDS, of Nashville, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

In this cause the estate of Lou Frank, deceased, is being wound up in the chancery court of Davidson county. His widow filed a petition in the cause, challenging the authority of the executor, and insisting that the will under which the executor was acting had been revoked for reasons hereinafter stated. The chancellor dismissed the petition and permitted an appeal.

The deceased, Lou Frank, died testate on March 22, 1935. He left a will dated September 30, 1930, under which Joseph Frank, Jr., was appointed executor. A codicil to this will was dated February 10, 1931. On June 2, 1931, Lou Frank, then a widower with two children, married the petitioner, Carrie Tyler Frank. On October 30, 1932, a child, Lou Frank, Jr., was born to this marriage.

The deceased made no other will after his second marriage and the birth of his child by that marriage, and the proposition of the petitioner is that the marriage and birth of the child after his will was written had the effect of revoking that will, and that deceased accordingly died intestate.

Undoubtedly at common law marriage and birth of a child brought about a revocation of a will executed before such marriage. Pritchard on Wills and Administration, sec. 292; 68 C. J., 828; 28 R. C. L., 187.

There were, however, exceptions to this rule at common law. Among other exceptions, it was sometimes held that where revocation of the will would result in no benefit to the issue thereafter born, such rule would not be applied. The fact that issue subsequently born

would take no part of the father's estate if the will previously executed remained effective was the chicf reason supporting the rule stated. The widow could, of course, take dower and other benefits at common law regardless of any will.

In *Wright* v. *Netherwood,* 2 Salk., 593, 91 Eng. Reprint, 497, testator, a widower with children, married again and had a child by his second wife. He and his wife and all his children, having embarked on a voyage, were lost at sea. It was held that there was no revocation of the will made prior to his second marriage.

The English cases held that the presumptive revocation of a will brought about by a subsequent marriage and the birth of a child was rebuttable. Thus in a case referred to in *Emerson* v. *Boville,* 1 Phill. Ecc., 339, 161 English Reprint, 1004, testator married after making his will and a child was born to his second wife. There was abundant proof showing that testator did not regard this child born to his second wife as his own and intended to let his first will stand. It was held that there was no revocation.

Other cases in which it was held that this presumptive revocation might be rebutted by circumstances are referred to by Sir John Nicholl in *Holloway* v. *Clarke,* 1 Phill. Ecc., 339, 161 Eng. Reprint, 1003.

The record before us shows that Mrs. Frank has dissented from her husband's will. Her husband having left three children, she takes her dower and a child's part of the personal estate. Code, sec. 8360. She would take the same if the will were revoked and her husband held to have died intestate.

Section 8131 of the Code is in these words:

"A child born after the making of a will, either before or after the death of the testator, inclusive of a mother-testator, not provided for nor disinherited, but only pretermitted, in such will, and not provided for by settlement made by the testator in his lifetime, shall succeed to the same portion of the testator's estate as if he had died intestate."

The child of the second marriage therefore takes the same portion of his father's estate whether the will be revoked or not.

Such being the situation, we think, upon the authorities cited, there is no revocation of the will. We find no precedent for adjudging a revocation where its only effect would be to displace an executor appointed by the will and to permit the estate to be wound up by an administrator appointed by the court.

It is urged by the executor that section 8131 of the Code, above quoted, effects a change of the common-law rule, or more properly speaking the rule of the ecclesiastical courts thereafter enforced in the law courts. There is much force in this argument. The statute seems to assume that a will executed before the birth of a child of any marriage, existing or subsequent, is not revoked. Otherwise, why the provision for the child born after the will?

Without passing on the last contention, however, we are satisfied to affirm the chancellor's decree for the reason that a revocation of the will would be of no advantage to the child of the second marriage, nor indeed, in this case, to the second wife, if we could look to her interest in determining the question.