## HAILEY v. HAILEY et al.—182 S. W. (2d) 127.

Western Section. May 7, 1943.

Petition for Certiorari denied. by Supreme Court, January 8, 1944.

J. L. Fry, of Union City, for appellants.

E. A. Morris, of Obion, and E. H. Lannom, of Union City, for appellee.

BAPTIST, J. This is an appeal from a decree of the Chancery Court of Obion County, allowing an attorneys' fee of $500 to the attorneys for complainant; in disallowing an attorney's fee to the attorney for the defendants; in disallowing expenses claimed by the defendants, and in taxing defendants with the costs.

On April 13, 1926, Samuel Wood Hailey executed a will which he left at the Masonic Temple in Memphis.

At that time he was unmarried. He maintained a residence at Obion, Tennessee, and his mother, Mrs. A. J. Hailey, lived with him. By the terms of the will he left all of his property, both real and personal, to his mother during her life and at her death to his two brothers, V. G. Hailey, G. W. Hailey and three married sisters. The above named two brothers were appointed executors of the will without bond.

In December 1928 Samuel W. Hailey and the complainant, Carrie Inez Hailey, were married, and in February 1936, a girl child, Hilda Hope Hailey, was born to this union.

In March 1929, Mrs. A. J. Hailey, the mother of Samuel W. Hailey and beneficiary of a life estate under the will, died.

In May 1938 Samuel W. Hailey died, and shortly thereafter on June 14, 1938, his will was probated in the County Court of Obion County, and V. G. Hailey and G. W. Hailey qualified as executors thereof without bond.

On June 24, 1938, the complainant, Harriet Inez Hailey, entered into a written agreement with the two defendants

and the three sisters of the deceased, under which she agreed not to dissent from her husband's will, and the brothers and sisters agreed to convey to her a house and lot in Obion and give to her an automobile which the deceased owned at his death, and the household and kitchen furniture. A deed to the house and lot was afterwards executed as agreed and Mrs. Hailey took possession of same, together with the automobile and the household effects.

The estate of Samuel W. Hailey consisted of the property which the widow took as above stated, and according to the inventory filed by the executors, of $6,257.83 in cash. The inventory showed that after the payment of debts there remained to "Heirs at Law trust a/c" $5,038.52.

On June 10, 1939, the complainant widow of S. W. Hailey dissented from the will. She also qualified as guardian of her infant daughter, Hilda Hope Hailey.

The bill in the case was filed by the widow in her own right and as guardian of Hilda Hope Hailey.

It charged that the defendants fraudulently procured her to enter into the written agreement, waiving her rights as widow; that the defendants had made a loan out of the estate's money to one of their sisters; that they held said funds without bond; that they were insolvent; that unless said funds were impounded the whole fund would be lost; that said will was revoked by the subsequent marriage and the birth of said child; and that the beneficiaries under the will had no interest therein; that a part of said fund was on deposit in the Commercial Bank of Obion.

It sought an injunction to inhibit V. G. Hailey and G. W. Hailey from checking or transferring said funds out of the Bank, and to enjoin the Bank from paying out

any of the funds; it sought to have the will declared void and the probate set aside, and prayed that if nothing could be gained by setting aside the probate then that the two defendants be required to pay said fund into Court to be there disposed of.

The Chancellor decreed that the assets of the estate having been collected and the debts paid nothing could be gained by setting aside the probate of will; that the widow had waived her rights to homestead, dower, year's support and exemptions. G. W. and V. G. Hailey paid into Court the amount of funds in their hands and the Commercial Bank of Obion was directed to pay into Court the amount of funds on deposit. There were no exceptions to this decree which was apparently satisfactory to all of the parties.

V. G. Hailey and G. W. Hailey made claim for an expense account of $329.76, included in which was a $192.49 paid out for life insurance policies which they claimed was for the protection and benefit of the trust fund; also that attorneys' fees be allowed their solicitor out of the funds of the estate.

The Chancellor disallowed this claim for expenses as being exorbitant and wholly unnecessary, and further it appeared that the two defendants as trustees handled the fund for their own use and benefit and not paying any interest thereon; that at the time of the filing of the original Bill they had withdrawn a large portion of the fund from time to time for their own use and benefit and not paying interest thereon; and further that their solicitor was not entitled to be paid out of said fund; and further that the solicitors for complainant had rendered valuable services in behalf of the minor and fixed a fee of $500 jointly for them to be paid out of the estate.

On June 24, 1938, the brothers and sisters of Samuel W. Hailey, deceased, as beneficiaries under the will, entered into a so called trust agreement, reciting the agreement with the widow, and undertaking to convey to V. G. and G. W. Hailey all the "remaining property" as trustees for the benefit of Hilda Hope Hailey, which instrument granted to these so called trustees "absolute power to control and expend either the income of the same or corpus as in their judgment seemed right and proper." The trustees were excused, under its terms, from giving bond for same.

Under this so called trust agreement, the defendants, V. G. and G. W. Hailey, were in the possession of the deceased's personal estate of more than $5,000, which was deposited in the Commercial Bank of Obion. Then from time to time they withdrew this money by check from the fund so that when this bill was filed there remained to the account little more than $1,200.

The testimony of V. G. Hailey on cross examination failed to give any account of the disposition of the funds, stating that his brother, G. W. Hailey, was actively in charge of the fund, and he could give no details. The testimony of G. W. Hailey was equally unsatisfactory. He contended himself with the statement that the money had been loaned to various parties, but declined to state when or to whom such loans had been made. In fact, the only loan accounted for was made to Ivie Lippard, brother in law of defendants, which was secured by a trust deed and which was repaid by consent into the funds impounded. Neither of the defendants made any effort to explain or give any accounting of the disposition of the funds and declined to produce any evidence as to whom the money had been loaned, or the nature of any investments claimed to have been made.

The deposition of L. E. Maloney, cashier of the Bank of Elbridge, was taken, and showed that more than $2,000 was withdrawn by the defendants out of the estate fund by check on the Commercial Bank of Obion, and that the defendants either received the cash on same, or credit to their personal account by deposit in the Bank of Elbridge.

We think what has been said is sufficient to show the lack of good faith upon the part of the defendants in handling these funds.

 The Chancellor correctly held that the will in question had been revoked by the subsequent marriage and birth of the child.

"At common law the general rule is that marriage and birth of issue of a testator, both occurring after the execution of his will, constitute a revocation of the will by implication of law, both as to personal and real estate." R. C. L. Vol. 68, page 828.

"The marriage of a man is not of itself a revocation of his will previously made, in regard to either real or personal estate; on the ground, probably, that the common law has made sufficient provisions for the wife by means of dower, nor is the birth of a child after the making of the will, in itself and independent of statutory provisions, a revocation of a will made subsequent to the marriage; for the testator is presumed to have contemplated such an event. *But a subsequent marriage and the birth of a child, taken together, constitutes a revocation of the testator's will, whether of real or personal estate, at common law,* as they amount to such a change in his situation as to lead to a presumption that he could not intend that the previous disposition of his property should remain unchanged. The concurrence of both events is indispensable." Size's Prichard Law of Wills, pages 343-4.

So it is that the brothers and sisters of Samuel W. Hailey took nothing of his estate under the will, and his child took the whole estate subject to the rights of the widow. The qualification of G. W. and V. G. Hailey as executors was of no effect. The execution of the instrument by the brothers and sisters attempting to create these two defendants as trustees of the estate conferred no power on them, and their actions under it were gratuitous.

Counsel for the defendants has called the court's attention to the cases in this state holding that a trust estate must bear the reasonable expenses and attorneys fees incurred in the execution of a trusteeship, and the duties of the trustees to defend the same.

We do not think these cases have any application for the reason that in the instant case there was no trust legally created under which they were authorized to act.

However, if it could be held that there was a trust under which they were legally acting, their want of good faith in its execution would bar them from any allowance for expenses and attorneys fees.

"No Person Bound to Act for Another in Any Matter Can, as to That Matter, Act for Himself. This, while not a maxim, is a fundamental doctrine of Equity, and one fruitful of many most beneficent consequences. In the first place, whoever undertakes to act for another's benefit, impliedly contracts that in every matter affecting the other, he will do for him all that good reason and good conscience require. In order to avoid any possible contention, and to leave absolutely no room for casuistry, Courts of Equity lay it down as a rule, without exception, that no trustee shall in any case, or under any circumstances, directly or indirectly, acquire any personal interest or title in or to the trust property, or its proceeds,

or make any personal profits out of the trust, or by means of his trust character, without the full consent of the beneficiary, given under circumstances that leave no room whatever to question the perfect fairness and good faith of the whole transaction. Even then, a Court of Equity acts hesitatingly in confirming such transactions; and when they are questioned, requires conclusive evidence of the fullest good faith on the part of the trustee, and the most thorough understanding of the facts, and the most absolute freedom of action, on the part of the beneficiary.'' Gibson's Suits in Chancery, Fourth Edition, Section 46.

The contention is made that the good faith of the defendants was shown in that, upon the Court's order, the money belonging to the estate was paid into Court. This cannot avail the defendants upon the question involved.

In Pomeroy's Equity Jurisprudence, Volume 3, Section 1075, it is said:

''The Duty Not to Mingle Trust Funds with His Own Funds. This second important duty of good faith includes not only the intentional use of trust funds in the trustee's own business. It prohibits the mixing the two funds together in one account the depositing of trust moneys to his own personal account with his own money in the bank, borrowing trust funds or going through the form of borrowing for his own use, mingling receipts and payments of trust money and his own moneys in his book accounts, and all similar modes of combining or failing to distinguish between the two funds. Trustee may not thus mingle trust money with his own, even though he eventually accounts for the whole, and nothing is lost. The rule is designed to protect the trustee from the hazard of loss, and being a possible defaulter.''

■ We are of the opinion that the bill in this case was properly filed resulting in the preservation of this estate, and that the Chancellor was correct in allowing the fee for the attorneys for the complainant, as commensurate with their services to the estate.

■ We are further of the opinion that the attorney for the defendants represented them as individuals and not in any capacity relating to this estate, or for its benefit. Therefore the denial for attorney's fee for their attorney was proper.

■ We are further of the opinion that the Chancellor was correct in not allowing the claim of the defendants for expenses.

It results that all of the assignments of error are overruled and the judgment of the Chancery Court is affirmed.

The defendants, V. G. Hailey and G. W. Hailey, will pay the costs.

Anderson, P. J., and Ketchum, J., concur.