[1]MRS. EDNA OVERSTREET RANKIN, Appellant, v. G. E. McDEARMON, Adm'r, etc., et al., Appellees.—270 S. W. (2d) 660.

Western Division at Jackson.   Dec. 2, 1953.

[1]This opinion was intended as a footnote to Price v. Price, 269 S. W. (2d) 920, 37 Tenn. App. 690. Rankin v. McDearmon was not passed upon by the Supreme Court of Tennessee.

J. Frank Warmath, G. Griffin Boyte and W. David Stinson, Jr., all of Humboldt, for appellant.

Lloyd S. Adams and Lloyd S. Adams, Jr., both of Humboldt, for appellees.

CARNEY, J. Appeal by Mrs. Edna Overstreet Rankin from a judgment of the Chancery Court of Gibson County that the will of Wilson M. Stroud, former husband of Mrs. Rankin, was impliedly revoked by their separation, divorce and remarriage of Mrs. Rankin accompanied by a property settlement between the parties.

Mrs. Rankin and Mr. Stroud were married for twenty-three years; lived in Humboldt until Mrs. Rankin moved to Colorado and she obtained a divorce from Mr. Stroud in

Colorado on July 12, 1944. She was married to her present husband in Colorado on June 6, 1946. No children were born to Mr. Stroud and Mrs. Rankin during their marriage.

■ In connection with the divorce there was a property settlement between Mr. Stroud and Mrs. Rankin. The terms of the same are not clearly shown. However, Mrs. Rankin admits that there was one and insists that he never completely performed the same in that there were some items of household goods, silverware, etc., which he never sent to her. Under all the facts, we do find that there was a property settlement between the parties.

On July 2, 1946, Mrs. Rankin executed and delivered a deed to Mr. Stroud conveying for "$1600.00 cash in hand paid and other good and valuable considerations, including the assumption of an indebtedness to Merchants State Bank of Humboldt, Tenn." the following real estate:

(1) A lot in Humboldt which Mrs. Rankin owned in fee, Mr. Stroud having deeded it to her of date July 28, 1938.

(2) One-half interest in a tract of 15 acres of land and a tract of 16 acres which had been conveyed to Mr. Stroud and Mrs. Rankin as husband and wife by deed of Edward Davis et ux. of date June 7, 1935. These tracts are also located in Gibson County, Tennessee.

On March 6, 1947, Mrs. Rankin wrote the following letter to Mr. Stroud:

"Denver, Colo.
"March 6, 1947

"Dear Wilson:

"I should have written you a long time ago and thanked you for the money. I appreciated it very

much and paid my Dr. bills etc., with it.

"Did you ever sell either the house or the farm? Hope if you did you got a good price for them.

"I am going to ask that you do one more thing for me then I won't bother you any more.

"If you will remember I asked that you send me certain things, but guess you forgot some of them, and there are some things I would like to have and if you will send them I will pay the express.

"There was a silver cake basket stored in the attic, which was a wedding present to my father and mother, also a cut glass vinegar cruet in the china cabinet, papa gave me for my birthday, and a cut glass cream & sugar also in the china cabinet, a silver jelly knife, berry spoon, & cold meat fork papa had given me at different times, and a small silver basket Blanche gave me for Xmas one time. Also wish you would send me that blue vase gold on one side and grey & blue on the other side, I also asked that you send me half of the china Eden pattern you know there were twelve of each.

"I am going to try to furnish a bedroom of my own, wish you would send me that rose colored rug— you gave me for my birthday—and that double blanket (wool) rose & white, some towels & sheets, there were a lot of them, there when I left. Surely they aren't all gone now.

"Will certainly appreciate it if you will send these things to me. It has been terribly cold here zero for the last week, at nights and from 12 to 25 in the day time. I don't like this climate at all it is entirely too cold to please me. .

"Hope this letter finds you well.

"As ever

"Edna"

Wilson M. Stroud continued to live in Humboldt, Tennessee, without remarrying until his death on December 27, 1948. An Administrator was appointed and the Administrator found among some old and worthless papers of the deceased two wills:

(1) One dated April 12, 1931, and witnessed by Joe R. Watkins and Paul Jones;

(2) The second, dated February 12, 1938 and witnessed by Benton Baker and N. M. Corbin.

In the first Will, "my beloved wife, Mrs. Edna Stroud" is sole beneficiary and executrix without bond.

The second Will had been altered, seemingly by cutting the fourth paragraph out and pasting the parts back together, so as to make the fifth paragraph the fourth paragraph, and said Will is as follows:

"I, Wilson M. Stroud, of Humboldt, Gibson County, Tennessee, being of sound and disposing mind and memory, do hereby make, declare and publish this as my last will and testament, hereby revoking all former instruments of like kind or character by me at any time heretofore made.

"First: I direct that all my just debts and obligations be fully paid and satisfied.

"Second: I give, and bequeath to my sister, Mrs. J. S. McLeod, address Rogers, Arkansas, $100.00 in money.

"Third: I give, and bequeath to my niece, Mrs. Roger Dillingham $5.00.

"Fourth: I give, devise and bequeath all of the remaining property of every kind and character, real

or personal, also any propety of any kind and character which I might inherit, to my beloved wife, Mrs. Edna Stroud, and it to be her sole and absolute property.

"I hereby nominate, constitute and appoint my wife, Mrs. Edna Stroud, as executrix to this my last will and testament, and direct that she be not required to execute bond as such.

"Witness my signature on this 12th day of February, 1938.

"Wilson M. Stroud

"Signed, declared and published by the above testator, Wilson M. Stroud, as and for his last will and testament, who signed the same in our presence and we, the undersigned witnesses, have subscribed our names hereto at his request and in his presence and in the presence of each other, on this February 12th, 1938.

"Benton Baker

Witnesses                          N. M. Colvin"

On September 10, 1948, Mr. Stroud executed a Deed of Trust on the house and lot in Humboldt to secure $5,490 to the local bank. After his death the trust was foreclosed, and the net proceeds from said sale amounting to approximately $3,400 are the subject of this litigation.

The Administrator filed a bill in the Chancery Court to transfer the administration from the County Court to the Chancery Court alleging insolvency, etc., referred to the two wills, made Mrs. Rankin as well as Mrs. J. S. McLeod and Mrs. Roger Dillingham parties defendant, and

asked the judgment of the Court as to whether the will of date February 12, 1938, was impliedly revoked. Mrs. McLeod and Mrs. Dillingham are the only heirs at law of Mr. Stroud and will take the net estate if the will is held to have been revoked. They insist that the will is revoked, and are the appellees here.

So far as counsel for the parties, the Chancellor or this Court can ascertain there is no reported case in Tennessee on this question. We have no statute in Tennessee governing the revocation of written wills.

■■ However, the common-law doctrine of implied revocation is firmly established in Tennessee. For instance, marriage and birth of a child after the execution of a written will will constitute an implied revocation of such will, though marriage alone nor birth of a child alone will not work a revocation. Hailey v. Hailey, 27 Tenn. App. 496, 182 S. W. (2d) 127; Frank v. Frank, 170 Tenn. 112, 92 S. W. (2d) 409. This rule is based upon the theory that these two events work such a change in the domestic life of the testator, that the law conclusively presumes that he did not anticipate these events at the time of the execution of the written will and, therefore, after their happening, he would not want his will to stand.

The rule in other states is certainly not uniform on the question of revocation by divorce and property settlement. The general rule is stated in 57 Am. Jur.—Wills—p. 371, Section 536 as follows:

"Where Property Rights of Parties Have Been Settled—According to some authorities the divorce of the testator is not a revocation of the will by operation of law, although the decree of divorce purported to settle the property rights of the parties, as

where it provided that certain property awarded to the spouse should be in full payment and satisfaction of all her interests in her husband's property, or the parties themselves had made a settlement of their property rights. But a greater number of authorities support the view that where the property rights of the parties to a divorce action have been settled in contemplation or anticipation of a divorce, such a settlement followed by a divorce impliedly revokes a prior will of one spouse in favor of the other, at least as to the legacies or devises bequeathed the spouse. Such circumstances have been held conclusive of revocation rather than as merely raising a rebuttable presumption of revocation.''

See also Mosely v. Mosely, 217 Ark. 536, 231 S. W. (2d) 99, 18 A. L. R. (2d) at page 697, and In re Bartlett's Estate, 108 Neb. 681, 189 N. W. 390, 190 N. W. 869, 25 A. L. R. at page 49 for extensive collection and discussion of the cases on this question.

■ We hold that by analogy to the rule that subsequent marriage and birth of child will revoke former written will; that a divorce and property settlement also works such a change in testator's life as to impliedly revoke his will made during his marriage.

■ The facts of the instant case are consistent with such implied revocation: The *two* old wills are found among unimportant and worthless papers; the wife is remarried and living with her second husband; the husband after divorce and settlement goes further and buys his wife's interest in their jointly owned property and her full interest in other real estate which he had deeded her during coverture. In other words, he severs all ties with his former wife by buying her out. Assignment of Error No. 1 must be overruled.

■■ Appellant further insists that the Chancellor erred in excluding her testimony that in a letter in October 1946 Mr. Stroud stated that his will still stood and that he wanted her to inherit his property, and that he also in one or more telephone conversations to her in Colorado told her substantially the same thing. We believe the better rule to be that the presumption of revocation is conclusive upon the happening of the two events: divorce and property settlement, and that, therefore, after revocation, neither words nor letters of testator would be sufficient to revive the will unless done with sufficient solemnity to republish the will. Therefore this Assignment of Error must also be overruled.

Accordingly, the decree of the Chancellor will be affirmed, and the cause remanded.

Swepston, P. J., and Avery, J., concur.