**In re ESTATE OF Eugene Eueal PERIGEN.**

**Troy Eugene PERIGEN b/n/f Patrick J. McHale, Guardian ad litem, Plaintiff-Appellant,**

v.

**Norma L. PERIGEN, individually and as Executrix of the Estate of Eugene Eueal Perigen, Defendant-Appellee.**

Supreme Court of Tennessee, at Nashville.

July 5, 1983.

Patrick J. McHale, Murfreesboro, for plaintiff-appellant.

R. Steven Waldron, Murfreesboro, for defendant-appellee.

## OPINION

HARBISON, Justice.

This case involves the rule of implied revocation of those portions of a will bequeathing property to a spouse where the husband and wife are later divorced and a property settlement is entered into in connection with the divorce proceedings. The trial court held that the will of the decedent, Eugene Eueal Perigen, was revoked, insofar as it pertained to his former wife, because of their subsequent divorce and property settlement. The Court of Appeals reversed and remanded for further proceedings. This Court granted permission to appeal.[1]

The facts developed in the record may be summarized as follows: Decedent Eugene Eueal Perigen and his former wife Norma L. Perigen were married on February 22, 1952, in Arkansas. They had two children, a daughter born in 1953, and a son born in 1955. The son predeceased his father, leaving one child, Troy Eugene Perigen, age 7, the minor contestant of the will.

The family moved to Tennessee in 1968, and shortly thereafter the husband and wife executed a joint holographic will. This is undated, but Mrs. Perigen estimated that it was signed in Rutherford County, Tennessee, in 1969. Except for a small bequest to a child by a former marriage of Mr. Perigen, the instrument left all of the property of the first to die to the survivor, who was also named as personal representative for the purpose of administering the estate of the first decedent.

Decedent and Mrs. Perigen were divorced by a decree of the Circuit Court of Rutherford County, Tennessee, entered on July 10, 1979. The divorce was granted to Mrs. Perigen upon grounds of irreconcilable differences. A property settlement agreement executed by both spouses, dated April 26, 1979, was exhibited to the final decree and approved therein. The agreement states that it was executed for the purpose of complying with the statute permitting divorces on the ground of irreconcilable differences. T.C.A. § 36–801(II).

Under the terms of the property settlement agreement, title to a mobile home in which the parties had been residing was divested out of Mrs. Perigen and vested in the decedent. The decedent agreed to continue to make payments thereon and to pay other debts of the parties, to permit Mrs. Perigen to continue to live in the mobile home until April 19, 1980, and at that time to pay her the sum of $1000.

The decedent and his wife continued to live together until about one week prior to the entry of the divorce decree. Decedent then moved out and remained for a short time, probably not more than a total of three weeks, at which time he moved back into the home and continued to live there for more than two years, until his death on August 3, 1981. He and his former wife

---

[1] As noted in the concurring opinion in the Court of Appeals, the case was improperly styled in the circuit court. It was transferred there from the probate court for the purposes of a will contest. It is customary, for procedural purposes, for the proponent of a contested will to appear as plaintiff and the contestant as defendant. The roles of the parties were reversed in the present case, but this discrepancy has no bearing upon the substantive issues involved in this appeal. The sole ground upon which the contest was based was the divorce and property settlement between decedent and his former wife.

resumed their former relationship except that they did not legally re-marry. They openly cohabited together and virtually rescinded the property settlement agreement which had been approved. Few of its provisions were carried out, particularly those pertaining to further payments to Mrs. Perigen. In an affidavit filed by her, she stated that they treated their assets for all practical purposes as being jointly owned after Mr. Perigen returned to their home. Mr. Perigen became ill with cancer in March 1981. Mrs. Perigen resigned her job and devoted her full time to his care and nursing until his death in August of that year.

On September 10, 1981, Mrs. Perigen offered the joint will of the parties for probate in solemn form. In her affidavit she stated that this document had remained in their home, in a metal box containing their important papers. Mr. Perigen had never removed or destroyed it and he had advised Mrs. Perigen where it was located. At no time prior to or subsequent to their divorce did Mr. Perigen ever remove his clothing and personal effects from the residence. He was insured under a group life insurance policy through his employer. Prior to the divorce he had named Mrs. Perigen as beneficiary, and he never changed this designation.

■ Tennessee has no general statute governing the revocation of wills. A testamentary instrument may be revoked by the testator in various ways, such as destruction, mutilation, or the execution of a later will. *See Price v. Price,* 37 Tenn.App. 690, 694, 269 S.W.2d 920, 921–22 (1954).

Implied revocation by operation of law from changed circumstances is also recognized in this state. For instance it is usually held that marriage and the birth of a child occurring after execution of a written will constitute an implied revocation thereof. *See Hailey v. Hailey,* 27 Tenn.App. 496, 182 S.W.2d 127 (1943). Unlike the rule in many jurisdictions, however, implied revo-

cation from these events in this state is "presumptive" only, and not necessarily conclusive.[2] The leading case is *Frank v. Frank,* 170 Tenn. 112, 92 S.W.2d 409 (1936). In that case the Court refused to hold that the will of the decedent was revoked by his subsequent marriage and birth of a child. The circumstances were that the surviving widow had dissented from the will, and the pretermitted child would, by statute (T.C.A. § 32–303), take the same portion of his father's estate whether the will was revoked or not. The Court said:

"Such being the situation, we think, upon the authorities cited, there is no revocation of the will. We find no precedent for adjudging a revocation where its only effect would be to displace an executor appointed by the will and to permit the estate to be wound up by an administrator appointed by the court." 170 Tenn. at 115, 92 S.W.2d at 410

The Court raised, but did not decide, the question of whether the pretermitted child statute, above referred to, might not have the effect of abrogating the common-law rule regarding implied revocation.

Drawing an analogy to the common-law rule regarding revocation by subsequent marriage and birth of issue, the Court of Appeals held that a divorce and property settlement between spouses operated as a matter of law to revoke provisions in a pre-existing will of one spouse in favor of the other. *Rankin v. McDearmon,* 38 Tenn. App. 160, 270 S.W.2d 660 (1953). Review of that decision was not sought in the Supreme Court. The Court of Appeals held that such an implied revocation would be conclusively presumed, apparently overlooking the fact that the rule to which an analogy was drawn, marriage and birth of a child, had been held presumptive only and not conclusive by this Court in the *Frank* case, *supra.*

The trial court held in the present case, upon the authority of *Rankin, supra,* that

---

**2.** *See* 1 *Pritchard on Wills and Administration of Estates* § 293 (4th ed., H. Phillips and J.W. Robinson, 1983).

the divorce and property settlement entered into by decedent and his former wife revoked his previous will. The facts of the instant case, however, and the facts upon which the Court of Appeals based its decision in *Rankin, supra,* are quite different. In that case the Court of Appeals said:

> "The facts of the instant case are consistent with such implied revocation: The *two* old wills are found among unimportant and worthless papers; the wife is remarried and living with her second husband; the husband after divorce and settlement goes further and buys his wife's interest in their jointly owned property and her full interest in other real estate which he had deeded her during coverture. In other words, he severs all ties with his former wife by buying her out." 38 Tenn.App. at 167, 270 S.W.2d at 663

The Court of Appeals in the present case found the facts so strikingly different that it concluded that the rule stated in the *Rankin* case, *supra,* should not be applied· here. It sought to substitute a "rebuttable" presumption of implied revocation for the "conclusive" presumption stated in *Rankin, supra.*

▮ Little clarity is added to the law, in our opinion, by use of the term "presumption" in either sense. We think it preferable to hold that as a general rule the subsequent marriage and birth of children to a testator are sufficient change in his circumstances to revoke his prior will and that a subsequent divorce and property settlement may also revoke a prior will insofar as the latter provides for the former spouse. Both rules, however, are subject to exceptions or changed circumstances which make their operation unjust or improper. An exception to the former rule was applied by this Court in the *Frank* case, *supra.* And we agree with the Court of Appeals that the facts of the present case vary so significantly from those in the *Rankin* case, *supra,* as to make the rule announced there inapplicable. That is to say, we are of the opinion that generally a divorce accompanied by a property settlement agreement which is fully carried out according to its terms should have the effect of revoking a prior will in favor of a former spouse, especially where the parties thereafter "sever all ties," as in the *Rankin* case. Where the property settlement agreement is not carried out or even attempted to be implemented, as in the present case, however, we do not think that the rule of the *Rankin* case is necessarily controlling.[3]

Recently this Court refused to apply a rule of presumed revocation, either conclusive or rebuttable, to an insurance policy designation where the decedent continued his former wife as beneficiary. There the parties were divorced, and the husband died some thirty-four days later, leaving unchanged the designation of his former wife as beneficiary of the policy. Reversing the Court of Appeals, this Court held that the divorce and property settlement had no effect upon the beneficiary designation, and the former wife was permitted to receive the insurance proceeds. *Bowers v. Bowers,* 637 S.W.2d 456 (Tenn.1982).

In that case the property settlement agreement in rather sweeping terms purported to release all claims which either party had against the other, but despite this fact the Court held:

> "It is our view that the property settlement agreement had no force and effect whatever upon the life insurance policy and neither the agreement nor the divorce terminated wife's status as named beneficiary in the policy or her right to receive the proceeds." 637 S.W.2d at 459.

The property settlement agreement in the present case is a one-page instrument not purporting in any sense to contain a general release between the divorcing parties, nor does the same make any reference to the prior testamentary instrument which they had executed.

---

**3.** *Cf. In re Estate of Blanchard,* 391 Mich. 644, 218 N.W.2d 37 (1974) ("presumption" of revocation to be applied only where "reasonable" under all of the circumstances). *See* Annot., 71 A.L.R.3d 1297 (1976) for a collection of cases from other states.

It is our view that all of the facts and circumstances of each case must be considered, including the terms of the will itself, the divorce decree and the property settlement, and the conduct of the parties to determine whether there has or has not been an implied revocation of a prior will. As stated by the Court of Appeals, ordinarily a permissible inference or conclusion can be drawn from the fact of a divorce and a property settlement agreement fully carried out, but this is not necessarily true in every instance. As suggested in *Rankin, supra,* generally if a divorced person wishes to provide for a former spouse, he or she would be well advised to execute a new will. Nevertheless, the terms of a prior will might be such as to negate an inference of revocation, and also the terms of a property settlement agreement might be such as to leave in force prior testamentary provisions. This is particularly true in view of the recent irreconcilable differences statute, which calls for a property settlement and which permits termination of marriage upon grounds not recognized at the time of the *Rankin* decision.

In its disposition of the case, the Court of Appeals remanded for further proceedings. The trial judge had granted judgment on the pleadings in favor of the contestant. The proponent filed a motion for summary judgment supported by affidavits which were not countered by the contestant. In the interest of justice the Court of Appeals, reversing judgment for the contestant, concluded that the latter should have an opportunity to controvert the factual allegations made by the proponent, which have been summarized herein. If he does not do so, the prior will should be sustained. We agree with this procedure and remand the case to the trial court for further proceedings as outlined by the Court of Appeals.

The judgment of the Court of Appeals is affirmed. All costs accrued in connection with the appeal to the Court of Appeals and to this Court will be taxed to the estate; all other costs will be fixed by the trial judge.

FONES, C.J., BROCK and DROWOTA, JJ., and RUSSELL, Special Justice, concur.