IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 28, 2017 Session

IN RE THE ESTATE OF WANDA JEANNE STARKEY

Appeal from the Circuit Court for Hamilton County
No. 15C422  L. Marie Williams, Judge

_____

No. E2016-01618-COA-R3-CV

_____

Decedent's daughter filed a notice of will contest, challenging a will that disinherited her and her sisters.  According to the contestant, decedent attempted to revoke the will by directing an unnamed person to destroy it in her presence.  But the unnamed person allegedly tricked decedent and destroyed another document instead.  A beneficiary under the will and the administrator of the estate filed a joint motion to dismiss the contest for failure to state a claim upon which relief can be granted.  The beneficiary and the administrator argued that the statutes applicable to revocation of wills required that the will actually be destroyed for an effective revocation.  The circuit court granted the motion and dismissed the will contest.  Upon review, we conclude that the enactment of Tennessee Code Annotated § 32-1-202 did not abrogate the common-law rule that fraud will not defeat revocation of a will.  So the contestant did state a claim for relief.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Case Remanded

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Stephen S. Duggins, Chattanooga, Tennessee, for the appellant, Drema S. Louck.

Christopher A. Wilson, Nashville, Tennessee, for the appellee, The Leukemia and Lymphoma Society of Middle Tennessee.

Anthony A. Jackson, Chattanooga, Tennessee, for the appellee Gregory D. Willett, Administrator of the Estate of Wanda Jeanne Starkey.

**OPINION**

**I.**

**A.**

On June 21, 1991, Wanda Jeanne Starkey executed her last will and testament. Under her will, Ms. Starkey left "all of [her] clothing, all pictures of family members related to [her] by blood, and all jewelry, with the exception of [her] engagement ring and wedding ring" to her three living children, Drema Dickinson, now Louck, Terri Scoggins, and Charlotte S. Goe. Ms. Starkey left the remainder of her estate to her husband. In the event that he predeceased her, the three children would inherit everything.

On September 28, 2009, Ms. Starkey executed a second will, which explicitly revoked "all former wills and codicils to wills heretofore made by [her]." Like her previous will, under the 2009 Will, the bulk of Ms. Starkey's estate went to her husband. But unlike the prior will, Ms. Starkey disinherited all of her children, "as [she and they] ha[d] not maintained a close, amicable bond." If her husband predeceased her, the 2009 Will provided that the Leukemia and Lymphoma Society of Middle Tennessee (the "LLS") would inherit in place of her husband.

Ms. Starkey died on March 14, 2013. Her husband predeceased her, leading to what would be the central dispute between Ms. Louck and the LLS.

**B.**

On April 2, 2013, Ms. Louck filed a petition for probate of the 1991 Will and granting of letters testamentary in the Chancery Court for Hamilton County, Tennessee.[1] The petition alleged that no later wills or codicils could be found and that Ms. Louck was "not aware of any instrument revoking the document or documents being offered for probate." On the same day, the Clerk & Master entered an order admitting the first will to probate and appointing Ms. Louck to serve as executor of the estate.

On June 21, 2013, the LLS filed its own petition for probate of the 2009 Will and granting of letters testamentary. The court revoked the letters testamentary previously issued to Ms. Louck, and because the executor named in the 2009 Will declined to serve, the court appointed Gregory D. Willett as administrator *cum testamento annexo* (the "Administrator").

---

[1] The 1991 Will named Ms. Louck and her sister, Ms. Scoggins, co-executrixes in the event that Ms. Starkey's husband predeceased her. Ms. Louck, with the support of her other sister, Ms. Goe, sought permission to be named the sole executrix.

2

On August 4, 2014, Ms. Louck filed a notice of will contest, challenging the 2009 Will. Despite previously asserting that she was "not aware" of any instrument revoking the 1991 Will, Ms. Louck claimed to have information concerning the fate of the 2009 Will. Specifically, Ms. Louck alleged that Ms. Starkey "attempted to have the [2009] Will destroyed and indeed believed that the [2009] Will had been destroyed in her presence, thereby rendering, the Decedent intestate or, in the alternative, making an earlier will effective."

The Administrator and the LLS filed responses in opposition to the will contest. Both argued that Ms. Louck failed to allege sufficient grounds for a will contest. As the Administrator noted, Ms. Louck only alleged that Ms. Starkey had attempted to destroy the 2009 Will, not that it had been destroyed in the manner specified under the will revocation statute. *See* Tenn. Code Ann. § 32-1-201(3) (2015). In addition, the original of the 2009 Will had been submitted to the court.

Ms. Louck later filed an amended notice of will contest, but the amended notice only further highlighted the fact that the 2009 Will had not been destroyed. In the amended notice, Ms. Louck alleged that Ms. Starkey instructed "another person" to destroy the 2009 Will in her presence and, in fact, believed that the 2009 Will had been destroyed. But this unnamed person allegedly destroyed another document, "trick[ing]" Ms. Starkey into believing that the destroyed document was the 2009 Will.

On November 20, 2014, the chancery court sustained Ms. Louck's right to contest the 2009 Will. *Id*. § 32-4-101(a) (2015). And, at the request of Ms. Louck, the court ordered that "the conduct of the trial upon the validity of the will shall be in Circuit Court to be heard with a jury." *Id*. § 32-4-109 (2015). Thus, the matter was transferred to the Circuit Court for Hamilton County.

Once in the circuit court, the Administrator and the LLS filed a joint motion to dismiss the will contest for "failure to state a valid claim for relief." According to the motion, Ms. Louck "fail[ed] to allege facts establishing any of the statutory manners of will revocation as set forth in Tenn[essee] Code Ann[otated] §§ 32-1-201 and 32-1-202."[2]

The circuit court concluded that "the bases set forth in [Tennessee Code Annotated] §§ [32]-1-201 and [32]-1-202 are the exclusive bases under which a will may be revoked." Because Ms. Louck did not allege that the 2009 Will was actually

---

[2] The motion also alleged that the will contest was time barred under Tennessee Code Annotated § 32-4-108 (2015). The trial court determined that the statute was inapplicable and that determination was not appealed.

destroyed, the court found that "the facts alleged . . . do not fit within any of the bases set forth in §§ [32]-1-201 and [32]-1-202." So the court dismissed the will contest.

## II.

### A.

The circuit court dismissed Ms. Louck's will contest on a motion under Tennessee Rule of Civil Procedure 12.02(6). A Rule 12.02(6) motion, also known as a motion to dismiss for failure to state a claim, "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Thus, "[t]he resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id.* In considering a 12.02(6) motion, courts must "construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). The complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). Making such a determination presents a question of law, and our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Id.*

The circuit court determined that the facts as alleged under the amended notice of the will contest did not establish a valid basis for revocation of the 2009 Will under Tennessee Code Annotated §§ 32-1-201 and 32-1-202. "Every application of a text to particular circumstances entails interpretation." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 53 (2012) [hereinafter READING LAW]. Statutory interpretation also presents a question of law, which we review de novo, with no presumption of correctness. *Davis ex rel. Davis v. Ibach*, 465 S.W.3d 570, 573 (Tenn. 2015).

Our goal in statutory interpretation is to "ascertain and effectuate the legislature's intent." *Kite v. Kite*, 22 S.W.3d 803, 805 (Tenn. 1997). When a statute's language is unambiguous, we derive legislative intent from the statute's plain language. *Carson Creek Vacation Resorts, Inc. v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). The words used in the statute should be given their natural, ordinary meaning "in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). But, when a statute's language is subject to several interpretations, we also consider the broader statutory scheme, the statute's general purpose, and other sources to ascertain legislative intent. *Wachovia Bank of N.C., N.A. v. Johnson*, 26 S.W.3d 621, 624 (Tenn. Ct. App. 2000).

4

B.

On appeal, Ms. Louck asserts that the destruction of a document that the testator believed to be her will constitutes a revocation so long as the document was destroyed by her or by another in her presence and at her direction. As early as 1846, our supreme court recognized that, where a testator has the apparent intention to revoke a will, an act of destruction does carry out that effect even though the will was not literally destroyed, so long as the testator completed the act he intended to work the revocation. *Ford v. Ford*, 26 Tenn. (7 Hum.) 92, 104 (1846) (citing EDWARD V. WILLIAMS, A TREATISE ON THE LAW OF EXECUTORS AND ADMINISTRATORS 79 (1841)); *see also* 1 JACK W. ROBINSON, SR. ET AL., PRITCHARD ON THE LAW OF WILLS AND ADMINISTRATION OF ESTATES § 297, at 4-39 (7th ed. 2009) (noting that, under pre-1985 cases, "an intention to revoke [a will] when coupled with an act, done or attempted, designed to carry the intention into effect is not defeated because the testator is prevented by force, fraud or mistake from completing the act of revocation according to his intentions"). Over fifty years later, the court explained by way of example that, "if the testator attempts to burn his will, and believes he has done so, but by the fraud of another a different paper is burned, it will be a revocation if the testator really intended it to be so, and honestly believed the will destroyed." *Billington v. Jones*, 66 S.W. 1127, 1128 (Tenn. 1901). But for the rule to apply, some force or fraud must have been involved either in preventing the destruction of the will or in the destruction of a document the "testator mistakenly believed to be his will." *In re Estate of Boote*, 198 S.W.3d 699, 724 (Tenn. Ct. App. 2005) (citing *Gregory v. Susong*, 205 S.W.2d 6, 9 (Tenn. 1947)).

The Administrator and the LLS insist that the common-law rule that fraud will not defeat revocation of a will was abrogated by statute. In 1985, the General Assembly enacted legislation creating two new sections that address revocation of a will or part of a will. 1985 Tenn. Pub. Acts 248. Tennessee Code Annotated § 32-1-201 provides four alternatives for the revocation. The statute currently provides as follows:

> A will or any part thereof is revoked by:
> (1) A subsequent will, other than a nuncupative will, that revokes the prior will or part expressly or by inconsistency;
> (2) Document of revocation, executed with all the formalities of an attested will or a holographic will, but not a nuncupative will, that revokes the prior will or part expressly;
> (3) Being burned, torn, cancelled, obliterated or destroyed, with the intent and for the purpose of revoking it, by the testator or by another person in the testator's presence and by the testator's direction; or
> (4) Both the subsequent marriage and the birth of a child of the testator, but divorce or annulment of the subsequent marriage does not revive a prior will.

5

Tenn. Code Ann. § 32-1-201.[3]

The General Assembly addressed the effect of a divorce or annulment on provisions of a will related to the former spouse in the second statute, Tennessee Code Annotated § 32-1-202. The Administrator and the LLS contend that subsection (e) of this statute makes the statutory methods for revocation found in Tennessee Code Annotated §§ 32-1-201 and 32-1-202 the only possible methods for a valid revocation. Tennessee Code Annotated § 32-1-202 provides as follows:

(a) If after executing a will the testator is divorced or the testator's marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, conservator or guardian, unless the will expressly provides otherwise.
(b) Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent but § 32-3-105 shall not apply. Other provisions conferring some power or office on the former spouse are interpreted as if the spouse failed to survive the decedent.
(c) If provisions are revoked solely by this section, they are revived by the testator's remarriage to the former spouse.
(d) For purposes of this section, divorce or annulment means any divorce or annulment that would exclude the spouse as a surviving spouse within the meaning of § 31-1-102(b). A decree of separation that does not terminate the status of husband and wife is not a divorce for purposes of this section.
(e) *No change of circumstances other than as described in this and § 32-1-201 revokes a will.*

*Id.* § 32-1-202 (2015) (emphasis added).

The Administrator and the LLS argue that it is "axiomatic" that all of the methods of revocation listed in Tennessee Code Annotated § 32-1-201 present a "change of circumstance." For this axiom, they direct us to the definitions of the words "circumstance" and "change" in the fourth edition of WEBSTER'S NEW WORLD COLLEGE DICTIONARY. From this, according to their argument, it follows that Tennessee Code Annotated §§ 32-1-201 and 32-1-202 "set forth the exclusive manners by which a will can be revoked in Tennessee."

---

[3] Originally the statute provided three alternatives for revocation, the first being "by a subsequent will which revokes the prior will or part expressly or by inconsistency." 1985 Tenn. Pub. Acts. 248. In 1992, the Legislature amended the statute by deleting the first alternative and replacing it with alternatives (1) and (2). 1992 Tenn. Pub. Acts 949.

As additional support for their argument, the Administrator and the LLS point to one of our prior decisions. In dicta in the case of *In re Estate of Boote*, we describe Tennessee Code Annotated §§ 32-1-201 and 32-1-202 as providing "five straightforward methods for revoking a will or codicil." 198 S.W.3d at 722. Then, citing Tennessee Code Annotated § 32-1-202(e), we state that "[w]ills and codicils cannot be revoked in any other manner." *Id.*

Our opinion also calls into question the continuing validity of cases like *Ford v. Ford*, cited above, and *Smiley v. Gambill*. *Id.* at 724. In *Smiley v. Gambill*, a testatrix destroyed a document that she mistakenly believed was her will with the intention of revoking it. 39 Tenn. (2 Head) 164, 165 (1858). The testatrix's mistaken belief stemmed from the fraud of others. *Id.* at 166. Afterward, the testatrix behaved as if she had no will, including, among other things, disposing of property provided for under her will and asking "friends to write another will for her, on the ground that she had destroyed her first [will]." *Id.* at 165. The court held those facts could amount to a revocation even though the will had not been destroyed. *Id.* at 168.

C.

Although the General Assembly has the constitutional and legislative authority to abrogate the common law, the intention to abrogate must be clear. *State v. Howard*, 504 S.W.3d 260, 270 (Tenn. 2016). We are "not [to] presume that the legislature intended to change the common law by implication." *Heirs of Ellis v. Estate of Ellis*, 71 S.W.3d 705, 712 (Tenn. 2002). Even where the intention to abrogate is clear, the alteration in the common law extends no "further than the statute declares or necessarily requires." *Shore v. Maple Lane Farms, LLC.*, 411 S.W.3d 405, 423 (Tenn. 2013). So "if a statute does not include and cover such a case, it leaves the law as it was before its enactment." *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 536 (Tenn. 2002) (quoting *Lavin v. Jordon*, 16 S.W.3d 362, 368 (Tenn. 2000)).

The Administrator and the LLS submit that the legislature explicitly abrogated common-law rules relative to revocation of wills by use of the language "[n]o change of circumstances other than as described in [the revocation statutes] revokes a will." *See* Tenn. Code Ann. § 32-1-202(e). As the Administrator and the LLS seem to acknowledge, the legislature's intention turns on the meaning of the phrase "change of circumstances." In the view of the Administrator and the LLS, every variety of revocation recognized in the common law amounts to a change of circumstances. They reach that conclusion by giving the words "change" and "circumstances" their ordinary and natural meaning, which is required in most instances. *See Lee Med., Inc.*, 312 S.W.3d at 526.

Although we agree that words in a statute should be given their ordinary and natural meaning, our supreme court has recognized an exception to that practice. "When a term having a well-recognized meaning in the common law is used in a statute," we give the term that meaning in interpreting the statute, "unless a different sense is apparent from the context, or from the general purpose of the statute." *Lively v. Am. Zinc Co. of Tenn.*, 191 S.W. 975, 978 (Tenn. 1917); *see also* READING LAW at 320 ("The age-old principle is that words undefined in a statute are to be interpreted and applied according to their common-law meanings."). In connection with will revocation, change of circumstances has a well-recognized meaning in the common law.

Under Tennessee common law, our courts recognized several ways in which a testator may revoke a will. For example, "[a] testamentary instrument may be revoked by [an action taken by] the testator [with respect to the will she wishes to revoke] . . . , such as destruction, mutilation, or the execution of a later will." *In re Estate of Perigen*, 653 S.W.2d 717, 719 (Tenn. 1983); *see also* RESTATEMENT (THIRD) OF PROP.: WILLS AND DONATIVE TRANSFERS § 4.1(a) (AM. LAW. INST. 1999) ("A testator may revoke his or her will in whole or in part by subsequent will or by revocatory act."). In the absence of an express act taken by the testator in relation to the will or a writing, we also recognized "[i]mplied revocation by operation of law from *changed circumstances*." *In re Estate of Perigen*, 653 S.W.2d at 719 (emphasis added). The testator's marriage plus the birth of a child subsequent to execution of the testator's will is one example of a changed circumstance. *Id.* "[A] divorce and property settlement also works such a change in [the] testator's life as to impliedly revoke his will made during his marriage."[4] *Rankin v. McDearmon*, 270 S.W.2d 660, 663 (Tenn. Ct. App. 1953); *see also* RESTATEMENT (THIRD) OF PROP.: WILLS AND DONATIVE TRANSFERS § 4.1(b) (AM. LAW. INST. 1999) ("The dissolution of the testator's marriage is a change in circumstance that presumptively revokes any provision in the testator's will in favor of his or her former spouse."). The law implied revocation of a prior will from "changes in the family or domestic relations of the testator" because such changes placed "new moral duties and obligations" on the testator. 79 AM. JUR. 2D *Wills* § 523, Westlaw (database updated Aug. 2017).

Tennessee Code Annotated §§ 32-1-201 and 32-1-202 both appear to have been modeled at least in part after provisions of the Uniform Probate Code. *Compare* 1985 Tenn. Pub. Acts 248 *with* UNIF. PROBATE CODE §§ 2-507, -508 (Pre-1990 Version)[5]

---

[4] Because the current version of § 32-1-202 only requires a divorce or annulment for a revocation to be effective, this section abrogated the common-law rule that divorce alone is insufficient to revoke a will by operation of law. *See Price v. Price*, 269 S.W.2d 920, 921 (Tenn. Ct. App. 1954) ("[I]t is generally held that divorce alone does not amount to such a change of conditions as will effect a revocation as a matter of law of a prior will[.]").

[5] The revocation sections of the Uniform Probate Code "remained unchanged until 1990." Robert Whitman, *Revocation and Revival: An Analysis of the 1990 Revision of the Uniform Probate Code and*

(Westlaw through 2016 Annual Meeting). Like Tennessee Code Annotated § 32-1-202, Uniform Probate Code § 2-508 addressed revocation of a will by virtue of a divorce or annulment. Also like Tennessee Code Annotated § 32-1-202, Uniform Probate Code § 2-508 included a final sentence regarding "change of circumstances":

> If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, conservator, or guardian, unless the will expressly provides otherwise. Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent, and other provisions conferring some power or office on the former spouse are interpreted as if the spouse failed to survive the decedent. If provisions are revoked solely by this section, they are revived by testator's remarriage to the former spouse. For purposes of this section, divorce or annulment means any divorce or annulment which would exclude the spouse as a surviving spouse within the meaning of Section 2-802(b). A decree of separation which does not terminate the status of husband and wife is not a divorce for purposes of this section. *No change of circumstances other than as described in this section revokes a will.*

UNIF. PROBATE CODE § 2-508 (Pre-1990 Version) (emphasis added). The comments to that section explain that the last sentence was "intended to change the rule in some states that subsequent marriage or marriage plus birth of issue operate to revoke a will." *Id.* cmt.

As is clear from Tennessee Code Annotated § 32-1-201(4), the General Assembly retained the common-law rule that a marriage plus birth of issue operates to revoke a will. Consequently, subsection (e) of Tennessee Code Annotated § 32-1-202 necessarily must reference the change of circumstances included in that section, divorce and annulment, and also "the subsequent marriage and the birth of a child of the testator," which is listed as revoking a will under Tennessee Code Annotated § 32-1-201.

We note that the current version of the Uniform Probate Code maintains the common-law distinction between revocations by change of circumstances and other types of revocations. *See* UNIF. PROBATE CODE §§ 2-507, -508 (amended 2010) (Westlaw through 2016 Annual Meeting). Changes of circumstances under the Uniform Probate

---

*Suggestions for the Future*, 55 ALB. L. REV. 1035, 1042 (1992).

Code include the felonious and intentional killing[6] of the testator or the divorce or annulment of the testator's marriage.[7]  *Id*. §§ 2-802, -803.  Any other "change of circumstance does not revoke a will or any part of it."  *Id*. § 2-508.  The Uniform Probate Code also recognizes revocations by writing, such as "by executing a subsequent will that revokes the previous will or part expressly or by inconsistency," and revocations by act, such as "burning, tearing, canceling, obliterating, or destroying the will or any part of it."  *Id*. § 2-507(a).

Applying this background, we interpret the phrase "change in circumstances" under Tennessee Code Annotated § 32-1-202(e) to mean the marriage and the birth of a child of the testator or the divorce or annulment of the testator's marriage.  Thus, subsection (e) of Tennessee Code Annotated § 32-1-202 does not abrogate the common-law principle as recognized by our supreme court in such cases as *Billington v. Jones* that fraud will not defeat an attempt to revoke a will.  *See* 66 S.W. at 1128.

Because Ms. Louck has alleged sufficient facts in support of her claim that would warrant relief under the common law, we conclude the court erred in dismissing her will contest.  *See Doe*, 2 S.W.3d at 922.  Here, as the basis for her will contest, Ms. Louck alleged that Ms. Starkey, with the intent and for the purpose of revoking her 2009 Will, had a document she mistakenly believed to be her 2009 Will destroyed in her presence.  She further alleged that Ms. Starkey's mistaken belief was due to the trickery of another.

___

[6] Previously, Tennessee Code Annotated § 31-1-106 (2015) only provided that a testator's killer who would otherwise receive a share of the testator's property "shall forfeit all right in" the testator's estate.  But by amendment effective July 1, 2017, *see* 2017-2 Tenn. Code Ann. Adv. Legis. Serv. 88-90, 92 (LexisNexis), Tennessee Code Annotated § 31-1-106 now provides, among other things, that the "felonious and intentional killing of the decedent"

> (1) *Revokes* any revocable:
> (A) Disposition or appointment of property made by the decedent to the killer in a governing instrument;
> (B) Provision in a governing instrument conferring a general or nongeneral power of appointment on the killer; and
> (C) Nomination of the killer in a governing instrument to serve in any fiduciary or representative capacity, including a personal representative, executor, trustee, or agent[.]

Tenn. Code Ann. § 31-1-106(c) (Supp. 2017) (emphasis added).  This change lends further support to our conclusion that Tennessee Code Annotated §§ 32-1-201 and 32-1-202 do not provide the exclusive means for revoking a will.

[7] The current version of the Uniform Probate Code expands the situations a divorce or annulment will impact to include "'will substitutes' such as revocable inter-vivos trusts, life-insurance and retirement-plan beneficiary designations, transfer-on-death accounts, and other revocable dispositions to the former spouse that the divorced individual established before the divorce (or annulment)."  UNIF. PROBATE CODE § 2-804 cmt.  A divorce or annulment "also effects a severance of the interests of the former spouses in property that they held at the time of the divorce (or annulment) as joint tenants with the right of survivorship; their co-ownership interests become tenancies in common."  *Id*.

Such facts are analogous to those described by our supreme court in *Billington v. Jones* of a "testator [who] attempts to burn his will, and believes he has done so, but by the fraud of another a different paper is burned." 66 S.W. at 1128.

## III.

Because the circuit court dismissed Ms. Louck's will contest based solely on an erroneous interpretation of Tennessee Code Annotated § 32-1-202(e), we reverse. The case is remanded for further proceedings.

_____
W. NEAL MCBRAYER, JUDGE

11